## Donaldson *v.* Farm Bureau Mutual Automobile Insurance Company, Appellant.

Argued May 7, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*John C. Sherriff,* with him *Paul E. Hutchinson,* of *Sherriff, Lindsay, Weis & Hutchinson* and *Rufus S. Marriner,* of *Marriner & Wiley,* for appellant.

*George I. Bloom,* of *Bloom & Bloom,* and *Wray G. Zelt, Jr.,* with them *Hughes, McAlister & Zelt, John F. Curran, Jr.,* and *Curran & Curran,* for appellees.

OPINION BY MR. JUSTICE STERN, June 24, 1940:

This case arises out of what was virtually a head-on collision between two automobiles just outside of Washington, Pa. The one car was driven by J. Walter Barnes, his guest riders being his son and daughter-in-law, Mr. and Mrs. J. Walter Barnes, Jr., their two minor children, and Alice S. Donaldson, the mother of Mrs. J. Walter Barnes, Jr. In the other car were Henry P. Merritt and Charles Washington. Merritt, Washington and the occupants of the Barnes car all brought suits against Barnes, recovered verdicts and judgments, and issued writs of attachment execution against Farm Bureau Mutual Automobile Insurance Company, in which Barnes carried liability insurance. The garnishee defended on the ground that Barnes had not coöperated with it as required by the policy, had colluded with

the claimants, and had made misrepresentations and sworn falsely as to the facts of the accident. These charges were presented to a jury, which rejected them and found in favor of the plaintiffs. The garnishee appealed in each of the cases; by stipulation of counsel all the appeals are to be governed by the decision in the present one relating to the suit of Alice S. Donaldson.

Barnes notified the insurance company of the accident, furnished oral and written statements to it containing his version of what had happened, obtained for it statements from the other occupants of his car, testified at the trial, and, in general, coöperated with the company in every possible manner except that it claims that the testimony which he and the passengers in his car gave at the trial was different from the accounts of the accident contained in their previous statements. The court, in an exceptionally clear and able charge, instructed the jury that the burden was upon the garnishee to prove the alleged lack of coöperation, and that, to relieve itself of liability on that ground, it must establish not only that there were variances between the pre-trial statements and the testimony, but that such variances were material and that they were due to a conscious, deliberate intent to deceive and not to innocent inaccuracy or mistake. These instructions were correct: *Conroy v. Commercial Casualty Insurance Co.,* 292 Pa. 219, 225, 226; *Cameron v. Berger,* 336 Pa. 229, 233; *Ocean Accident & Guarantee Corporation v. Lucas,* 74 F. (2d) 115; *State Automobile Mutual Insurance Co. v. York,* 104 F. (2d) 730. The question of lack of coöperation is ordinarily for the jury, especially when, as here, a finding of improper intent is necessary in order for the garnishee to establish such a defense: *Graham v. U. S. Fidelity & Guaranty Co.,* 308 Pa. 534, 540; *Cameron v. Berger,* 336 Pa. 229, 235.

So far from being sufficiently conclusive to warrant a directed verdict, the evidence presented by the gar-

nishee furnished but little justification for its conten-
tion that there were substantial discrepancies between
the statements made by the insured and the testimony
given by him, and even less that he was guilty of bad
faith. Without attempting to make a detailed analysis,
it is sufficient to point out that what he told the com-
pany or its attorneys at various times previous to the
trial amounted in substance to this: he was traveling on
his right side of a three-lane cement highway the center
line of which was not marked; he saw the Merritt car
coming toward him 400 or more feet away and traveling
at 35 to 40 miles per hour, which was approximately
the same speed as that of his own car; Merritt started
to bear over to Barnes' side of the road and then,
straightening out again, came over the hypothetical cen-
ter line about 3 to 4 feet; Barnes swerved his car to
the left, Merritt turned slightly again to his right, and,
when the collision occurred, Barnes' car was still in
his right hand lane but near the center of the highway
and the left front wheel of the Merritt car was just about
over the center. In a signed statement which he gave
to the company Barnes admitted that he "had plenty of
time to get out of the way, but being confused, I failed
to do so," and in a proof of loss which he submitted only
three days after the accident he stated that he was "con-
fused" and made a turn to his left which resulted in
the collision. His testimony at the trial was to this
same general effect. He there said that he saw the Mer-
ritt car about 300 feet up the road, it began to veer over
toward him, he thought it was going to come entirely
across the road and turn in at the driveway to a saw-
mill situated on his right, so he turned to the left and
increased his speed thinking he could pass to the left
of the Merritt car; at the time of the collision his left
front wheel was at or about the center of the road—a
matter of inches one way or the other—and the Merritt
car, at least as to its left wheels and left half, were on
Barnes' side of the road. When interrogated specifically

as to why he turned his car to the left, he said, "The only way I can answer that is I would like to know myself. . . . I didn't know unless it was done so quick that you didn't have time to make up your judgment." We are unable to detect here the alleged grave variances of which the garnishee complains. It insists that the original statements showed no liability on the part of Barnes and therefore it refused to settle the claims against him; such liability, however, was clearly indicated in those statements because therein Barnes admitted that he was still a considerable distance away from Merritt when the latter began to bear in his direction, both cars were going slowly, there was no apparent emergency, and Barnes could easily have stopped and avoided the accident, instead of which he pulled over to his left in front of the oncoming car, and thus made himself largely responsible for the accident. As to which side of the road each car was on when the collision occurred there was necessarily doubt in view of the fact that there was no marked middle line, but from the very beginning Barnes stated that the accident happened close to the center of the highway and that the Merritt car was only partly across it. As to his answer, when asked why he turned to the left, that he himself "would like to know," he obviously meant that, on reflection, he could not justify the turn, and had come to realize that it was a mistake of judgment on his part. He had always admitted that he was "confused" at the time. On the whole, considering that nearly a year elapsed between the occurrence of the accident and the time of the trial, there would seem to be a fair measure of similarity between the statements previously made to the company by Barnes and the testimony given by him at the trial.

The garnishee complains that the pre-trial statements made by J. Walter Barnes, Jr. and Alice S. Donaldson also differed from their testimony. Whether this be so or not,—and we fail to note any important variances,—

the insured cannot be held responsible if such discrepancies existed, since these would not tend to show lack of coöperation on his part. All that Barnes did was to obtain the statements; there is no evidence that he was responsible for their contents, or for the testimony of these parties.

Nor is there any greater merit in the charge of collusion made by the garnishee. It alleges that the statements of Barnes and the occupants of his car all bear close resemblance to one another, but the evidence shows that Barnes prepared only his own. The garnishee also seeks to draw an inference of collusion from the family relationships between Barnes and his guest-riders. While it is natural that he should be sympathetic toward the claims of the members of his family against the insurance company, this does not constitute evidence, much less proof, of dishonesty or fraud upon his part. Temptation may have existed, but it is not shown that he succumbed to it. If an insurance company does not exclude from the coverage of its policy liability to the members of the insured's family, it cannot complain when such liability is asserted, nor should it be permitted to shield itself by the argument that the family relationship furnishes of itself evidence of collusion. The most that can be said is that in such cases the conduct and testimony of the parties should be carefully scrutinized, because human nature is such that the insured is not likely to be really hostile to claims of this sort made initially and nominally against himself but ultimately and actually against the insurance company: *State Automobile Mutual Insurance Co. v. York,* 104 F. (2d) 730; *Conroy v. Commercial Casualty Insurance Co.,* 292 Pa. 219, 226.

The issue in this case could not have been adjudicated by the court as a matter of law; the jury was the tribunal to pass upon it, and its verdict, being the result of a well-conducted and errorless trial, is conclusive.

Judgment affirmed.