## ASSOCIATED INDEMNITY CORPORATION v. DAVIS et al.

### Appeal of PENNSYLVANIA R. CO.

### No. 8119.

Circuit Court of Appeals, Third Circuit.
Argued Feb. 4, 1943.
Decided May 28, 1943.

Spencer G. Nauman, of Harrisburg, Pa. (W. E. Shissler, of Harrisburg, Pa., on the brief), for appellant.

Walter H. Compton, of Harrisburg, Pa., (John H. Moody, of Harrisburg, Pa., on the brief), for appellee.

Before MARIS, JONES, and GOOD-RICH, Circuit Judges.

GOODRICH, Circuit Judge.

This is an action for a declaratory judgment by the plaintiff insurance company, which seeks a declaration of its freedom from liability under the policy as to Harry R. Davis, Jr., based on his alleged failure to cooperate with the insurer as required by the terms of the policy. The plaintiff issued, in 1938, a combination automobile insurance policy to Harry R. Davis, Sr. On October 29, 1938, Harry R. Davis, Jr., the insured's son, was driving the automobile, covered by the policy, in a caravan of cars going to a football game. In the car were a number of fellow students of the Harrisburg Academy, including John Brindle Anstine, Ned Loftin and Eugene Pat Maley. At a railroad crossing, in Lancaster County, Pennsylvania, the Davis automobile collided with a train owned and operated by the Pennsylvania Railroad. Davis, Jr., and the other named occupants of the car suffered personal injuries.

The Anstine and Maley boys, by their parents as next friends and in their own right, instituted separate suits in trespass in the Court of Common Pleas, Dauphin County, Pennsylvania, against the railroad and both Davises at the September Terms of 1938 and 1939 respectively. Loftin, although he had not brought suit, at the time the present action was brought, was alleged to be claiming damages for his injuries. The plaintiff company retained William H. Neely, Esquire, as counsel to represent the Davises in these actions. When the Anstine case was called for trial on April 1, 1940, Neely sought and was granted leave to withdraw his appearance for Davis, Jr., and his guardian ad litem, his mother, because of a failure to cooperate in the preparation of the defense and absence in court, both of which were conditions required by the insurance policy. This matter will be discussed more fully later. Disclaimers of liability on the part of the insurer for any judgment that might be recovered against Davis, Jr., were promptly served.[1] The case was continued at the request of counsel for the railroad until May 8, 1940, when it was tried. Neely represented Davis, Sr., and obtained a compulsory non-suit as to him. Davis, Jr., and his mother, who appeared at the trial on May 8, were represented by Willis F. Daniels, Esquire. The jury returned a verdict in favor of the Anstines but failed to make any finding as to the liability of Davis, Jr. The Supreme Court, on June 30, 1941, reversed the judgment on grounds not relevant here and ordered a new trial in which the defendants were to be the railroad company and Davis, Jr. Anstine

---

[1] Additional disclaimers of liability as to the claims of the other passengers, in so far as Davis, Jr., was concerned, were made on July 8, 1940.

v. Pennsylvania Railroad Company, 1941, 342 Pa. 423, 20 A.2d 774.[2]

On December 6, 1940, the insurer instituted the present action, seeking a declaratory judgment that it was not obligated to pay any claims against Davis, Jr., arising from the accident nor to defend suits against him because of his breach of the cooperation clause of the policy. An order was rendered in favor of the insurer. This appeal was taken by the Pennsylvania Railroad.

■ Objection was seasonably made to the entertainment of this suit by the trial court. It was contended that the state courts had taken jurisdiction of the subject-matter by virtue of the Anstine and Maley suits; that the same questions of law and fact were there involved as in the action for declaratory judgment and could be fully adjudicated by the state court. This contention is without merit. The plaintiff in the action for declaratory judgment was not a party to the Anstine and Maley suits. The latter were actions in trespass for personal injuries. They did not involve the question of the insurer's liability on its policy which was sought to be adjudicated in the declaratory judgment action. The Anstine and Maley suits would not determine the controversy between the parties in the action for a declaratory judgment. The trial judge's refusal to dismiss the action on these grounds was a proper exercise of discretion. Maryland Casualty Co. v. Consumers Finance Service, Inc., of Pennsylvania, 3 Cir., 1938, 101 F.2d 514.

The other theory on which dismissal was sought was that since the Supreme Court of Pennsylvania had ordered a new trial in the Anstine suit, the action for declaratory judgment had become moot. The order for a new trial, it is said, citing appropriate Pennsylvania authorities, restored the case to the status it had before any trial occurred. There was thus no "actual controversy."

■ This does not reach the heart of the problem as we understand it to be. A condition of the policy involved was cooperation by the insured. If, prior to the order for a new trial, that condition was so violated as to terminate the insurer's liability, nothing except agreement by the insurer, absent here, could revive that liability. The order for a new trial, in the personal injury suit, did not render that issue moot. The question which must be decided is whether the liability of the insurer had been terminated. This, we take it, is a question to be decided under the law of Pennsylvania. While the plaintiff is a foreign corporation the policy was countersigned in Philadelphia, delivered to a Pennsylvania policy holder, and all the subsequent operative facts took place in Pennsylvania. Under those circumstances, we take our rule from the state decisions. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. We turn then to the merits of the case.

The policy of insurance, under the heading of "Conditions" provides: "7. Assistance and Cooperation of the Insured: The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials * * *, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. * * *" The facts, as found by the trial judge, show, we think, that at the time the first disclaimers of liability were served, April 1, 1940, there had been non-compliance by Davis, Jr., and his guardian with the conditions of the policy. The relevant facts may be outlined as follows:

After the accident on October 29, 1938, Davis, Jr., was taken to a Lancaster hospital. C. C. Norton, investigating the case on behalf of the insurer, made four calls at the hospital to obtain a statement from Davis, Jr. The first call was on October 31, 1938. On his first visit the investigator was turned away by the nurse. Although he informed Davis, Jr., that he represented his insurance company, he failed in his efforts until his fourth visit, on December 6, 1938, when, with the assistance of Davis, Sr., he obtained a satisfactory interview.

After Neely was retained as attorney for the insurer to represent the Davises in the Anstine action, he tried to get Davis, Jr., and his mother, to consult and cooperate with him in preparing the defense. From January 23, 1940, to April 1, 1940, Neely, on various occasions, sent two letters to Davis, Jr., two to his mother, sent the

[2] On retrial a verdict was recovered against the railroad and Harry Davis, Jr. in the amount of $23,938.65 which was remitted by the trial court to $13,938.65. This was affirmed on appeal to the Supreme Court of Pennsylvania, 1943, 346 Pa. 185, 30 A.2d 433.

investigator to the Davis home, had numerous conversations with Daniels, representing Davis, Jr., and his mother, and was in touch with Davis, Sr.[3] It was made clear to the son and his mother that Neely represented them on behalf of the insurance company, that the son's help was needed to secure information and witnesses for the defense, and that a refusal to cooperate would result in Neely's withdrawing from their defense. Neely even offered to come out to the Davis home to facilitate matters. All the letters, requests and conversations proved of no avail.

On January 24, 1940, the case was continued over to April 1. On that date the investigator called at the Davis house and found no one home. When the case was called for trial in the courtroom, neither Mrs. Davis nor her son, Davis, Jr., made themselves known to Mr. Neely, though it is not found as a fact that they were not present. Neely, then, asked for leave to withdraw on account of the foregoing facts and permission was granted by the court. The facts recited clearly show that the cooperation of the insured, called for by the policy, was not met on April 1, 1940, and for a period prior thereto.

At this point the theme changes. Upon the Neely withdrawal the case was continued to May, 1940, at the request of counsel for the railroad. On April 11, Mrs. Davis wrote to Neely, apologized for the previous lack of courtesy and cooperation and stated that both she and her son would give him every assistance in preparing the case for trial in May. They were present at the trial, were represented by counsel, though not the counsel for the insurance company, and Davis, Jr., testified as a witness. There is no charge of collusion by Davis, Jr., with the plaintiffs in the personal injury suit.

The insurance company's position is that a material breach of the contract had occurred prior to April 1 and that like any other promisor against whom a material

breach has been committed by the other party to a contract, it is relieved from any duty of performance thereafter. Cf. Restatement, Contracts (1932) §§ 274, 397. The events following April 1, 1940, are irrelevant if this view is taken. If the insurer's premise is correct the conclusion it presents doubtless follows. It is upon this point that the controversy in the case turns, and upon this point that the Pennsylvania law, as set out in the decisions, is controlling.

The effect of what an insurer has claimed as such non-cooperation by the insured as to relieve the insurer from liability on the policy has been much litigated in many courts.[4] But decisions elsewhere, and statements of text writers upon the subject[5] are helpful to us only if the matter is left doubtful by the Pennsylvania decisions. We do not think it is doubtful. The Pennsylvania decisions are to the effect that the insurer is not relieved from liability unless the insured's failure to cooperate results in substantial prejudice and injury to the insurer's position. Conroy v. Commercial Casualty Ins. Co., 1928, 292 Pa. 219, 140 A. 905. The rule has been many times stated and applied. See Bachman v. Monte, 1937, 326 Pa. 289, 192 A. 485; Cameron v. Berger, 1939, 336 Pa. 229, 7 A.2d 293; Tomlinson v. Goldberg, 1936, 121 Pa.Super. 125, 182 A. 765.[6] Ordinarily the question of lack of cooperation is for the trier of the fact to determine. Donaldson v. Farm Bureau Mutual Automobile Insurance Company, 1940, 339 Pa. 106, 14 A.2d 117. As in negligence law, the court determines its existence and effect in a clear case. See the Cameron and Bachman cases cited above.

In this case the trial judge concluded that the conduct of Davis, Jr., "constituted a substantial breach of the condition in the policy requiring his cooperation prejudicial to the plaintiff. * * *" We follow the facts found by the trial judge as to what Davis, Jr., did

---

3 Mr. and Mrs. Davis were separated, the boy living with his mother.

4 For collection of the decisions, see notes in (1931) 72 A.L.R. 1446; (1935) 98 A.L.R. 1465; (1942) 139 A.L.R. 771.

5 As, for instance, Appleman, Automobile Liability Insurance (1938) p. 260, who states, "The insured cannot, after the insurer has denied liability for failure to cooperate, thereafter avoid the effect of his actions."

6 This doctrine, called the rule of "substantial prejudice", is criticized in Appleman, supra at pp. 261, 262, as one which "distorts and subverts the language and meaning of this clause". Whether this stricture is well founded is not a question for our decision in this case. The author is head of the legal department of the State Farm Mutual Automobile Insurance Company.

both before and after April 1, 1940. We do not find in them any facts tending to show that prejudice to the insurer resulted. Nor do we find in the testimony anything to show prejudice. A witness for the insurer said he was not, as investigator for the company, permitted by the principal of Harrisburg Academy to interview the football coach and students present at the scene of the accident. Whether Davis, Jr., could have affected that decision is highly speculative; he was but a student at the school and there is no suggestion of lack of cooperation as to his father. The case was not tried in April but in May. Davis, Jr., testified he was available on and after April 11 for consultation, had he been called. Compare the contrasting facts in Cameron v. Berger, supra. And he had, months before the case was tried, made a statement of his version of what happened on the occasion of the accident.

We conclude that there was no showing on which a finding of prejudice to the insurance company could be made and that under the Pennsylvania authorities, such prejudice must be found in order to relieve the insurer from liability under the policy.

The order of the District Court is reversed and the case remanded for further proceedings in accordance with this opinion.

