748 S.E.2d 781

AUTO–OWNERS INSURANCE COMPANY, Petitioner,

v.

Samuel W. RHODES; Piedmont Promotions, Inc.; Marion L. Eadon d/b/a C & B Fabrications; C & B Fabrications, Inc.; and Low Country Signs, Inc., Respondents.

Appellate Case No. 2009–143546.

No. 27316.

Supreme Court of South Carolina.

Heard Feb. 20, 2013.
Decided Sept. 25, 2013.

586

588

Alfred Johnston Cox, of Gallivan, White & Boyd, PA, John Lucius McCants of Rogers Lewis Jackson Mann & Quinn, LLC, both of Columbia, for Petitioner.

William O. Sweeny, III, William Roberts Calhoun, Jr., both of Sweeny Wingate & Barrow, PA, of Columbia, Creighton B. Coleman of Coleman Tolen & Swearingen, LLC, of Winnsboro, Bert Glenn Utsey, III, Matthew Vernon Creech, both of Peters Murdaugh Parker Eltzroth & Detrick, PA, of Walterboro, for Respondents.

Justice BEATTY.

Samuel W. Rhodes ("Rhodes") and Piedmont Promotions, Inc. ("Piedmont") sued Marion L. Eadon, d/b/a C & B Fabrication,[1] for damages arising out of the faulty construction of three outdoor advertising billboard signs after one of the signs fell across Interstate 77. A Fairfield County jury returned a verdict for actual and punitive damages in favor of Rhodes ("the tort action"). At the time of the tort action, Eadon's two corporations, C & B Fabrications, Inc. and Low Country Signs, Inc., were listed as named insureds under a commercial general liability ("CGL") policy ("the policy") issued by Auto–Owners Insurance Company ("Auto–Owners"). Eadon sought indemnification from Auto–Owners for the verdict. In response, Auto–Owners filed this declaratory judgment action (the "DJ action") to determine whether it has a duty to indemnify Eadon under the policy.

The circuit court judge found Eadon was insured by the policy and that all damages, except for the price of the signs, were covered by the policy. After post-trial motions were filed, the Court of Appeals reversed the tort action on the ground that venue was proper in Clarendon County rather than Fairfield County. *Rhodes v. Eadon*, Op. No. 2006–UP–413 (S.C. Ct.App. filed Dec. 15, 2006). Subsequently, Auto–Owners filed a motion to be relieved from the DJ order as the underlying tort action had been reversed and vacated. The judge denied this motion. On appeal, the Court of Appeals affirmed as modified the DJ order. *Auto–Owners Ins. Co. v. Rhodes*, 385 S.C. 83, 682 S.E.2d 857 (Ct.App.2009). This Court granted Auto–Owners' petition for a writ of certiorari to review the decision of the Court of Appeals. We affirm in part and reverse in part.

---

1. Throughout these proceedings, Eadon's business has been referred to as C & B Fabrication, C & B Fabrications, and C & B Fabricators.

## I. Factual/Procedural History

Eadon is the sole owner and shareholder of C & B Fabrication and Low Country Signs, Inc., both of which conducted business under the name C & B Fabrication. Rhodes is the sole owner and shareholder of Piedmont Promotions, Inc., which owns and leases outdoor advertising space in various locations. In 1999, Rhodes contracted with Eadon to design, fabricate, and erect three outdoor advertising signs on property owned by Rhodes that bordered Interstate 77 in Fairfield County. Rhodes obtained the requisite permits from the South Carolina Department of Transportation ("SCDOT") to erect the three signs.

In December 2000, approximately ten months after the installation of the signs, the middle sign was discovered to be leaning toward I–77. Rhodes contacted Eadon to inform him of the problem. Shortly thereafter, Eadon sent a crew to address the issue. On January 20, 2001, three days after the crew visited the site, one of the other signs fell across I–77, blocking both lanes of southbound traffic. Based on its investigation, SCDOT ordered Rhodes to remove the remaining two signs and revoked Piedmont's permits to maintain signs on the property. Rhodes immediately requested that Eadon remove the two remaining signs. Eadon, however, removed only the one sign that was previously leaning and refused to remove the third and final sign.

Following this incident, a General Liability Notice of Occurrence/Claim was forwarded to Auto–Owners from Creech Roddey Watson Insurance, Eadon's insurance company. Upon receipt of this claim, Auto–Owners sent a reservation of rights letter to Eadon regarding the incident, stating it was unsure whether a claim existed under the CGL policy. Over the next few months, Auto–Owners paid several claims for damages caused by the fallen sign, but stated the CGL policy did not cover the majority of the expenses that would be incurred following the loss.

On December 12, 2001, Rhodes and Piedmont filed the tort action against "Marion L. Eadon d/b/a C & B Fabrication," alleging damages to the real estate owned by Rhodes and lost income by Piedmont due to the negligent design, fabrication,

and erection of the signs by C & B, which led to the removal of the three signs and the revocation of the SCDOT permits.

On October 14, 2002, while the tort action was pending, Auto–Owners filed the DJ action to determine whether coverage was provided pursuant to the CGL policy.

The tort action was tried in Fairfield County between August 30 and September 2, 2004. A jury returned a verdict for Rhodes and Piedmont in the amount of 3 million dollars in actual damages and 3.5 million in punitive damages for the negligence cause of action. Eadon appealed this verdict to the Court of Appeals.

While Eadon's appeal was pending, the circuit court judge issued an order in the DJ action on November 7, 2006. The judge found that Auto–Owners was obligated to indemnify Eadon for the judgment rendered in the tort action. In so ruling, the judge found the sign falling on the interstate constituted an "occurrence" that resulted in damages "beyond the defective work" to "property other than the defective work itself." The judge further found "the loss of use of the remaining two signs and the consequential damages flowing therefrom was causally linked to the sign that fell and constituted property damage caused by an occurrence."

Specifically, the judge found coverage for "property damage" based on the physical injury to the real estate, costs to remove the signs, and loss of use of the signs. The judge further found that Rhodes suffered diminution in value of his real property as SCDOT prohibited him from erecting signs in the future. The judge discounted all of the policy exclusions raised by Auto–Owners as Rhodes's claim for damages was based on the consequential damages incurred to his real estate rather than to the signs produced by C & B. However, the judge ruled that the contractual price of the signs was excluded as this fell within the purview of the "your work" exclusion.

On December 15, 2006, the Court of Appeals reversed the verdict in the tort action based on the trial court's failure to grant Eadon's motion to transfer venue to Clarendon County, his county of residence. *Rhodes v. Eadon*, Op. No.2006–UP413 (S.C. Ct.App. filed Dec. 15, 2006).

Based on this development, Auto–Owners filed a supplemental Rule 59(e), SCRCP, motion. Alternatively, Auto–Owners filed a motion pursuant to Rule 60, SCRCP, to have the DJ order declared null and void based on the judge's reliance on the evidence and testimony in the vacated tort action. The judge granted Auto–Owners' motion in part, striking only the portion of the order referencing the money damages awarded by the jury. The other portions of the order remained in full force and effect.

Auto–Owners appealed the DJ order to the Court of Appeals. The Court of Appeals affirmed as modified. *Auto–Owners Ins. Co. v. Rhodes*, 385 S.C. 83, 682 S.E.2d 857 (Ct.App.2009). In so ruling, the court found: (1) the DJ action was ripe for adjudication; (2) Eadon constituted an insured under the policy as he was involved in the procurement of the contract with Rhodes and Piedmont; (3) there was an "occurrence" under the policy because the property damages were the result of the unexpected happening of the sign falling; (4) the policy covered the costs associated with Rhodes's required removal of the final sign as well as the diminution of value to Rhodes's property due to the loss of his permits to erect signs in the future; and (5) none of the policy exclusions relied on by Auto–Owners precluded coverage as the majority of the damages sought by Rhodes were to his business, rather than the actual work product (the signs of C & B), which was properly excluded. *Id.* at 93–108, 682 S.E.2d at 863–71. Additionally, the court vacated the portions of the judge's order that referenced the jury, verdict, and damages in the tort action as they were "moot in view of the reversal of that verdict." *Id.* at 96, 682 S.E.2d at 864. This Court granted Auto–Owners' petition for a writ of certiorari to review the decision of the Court of Appeals.

## II. Discussion

### A. Overview of Analysis

In analyzing this case, we must answer the threshold question of whether the reversal of the underlying tort action affected the propriety of the DJ action. If the requisite judicial controversy is present, we must next determine whether Eadon is an "insured" under the provisions of the

policy. If so, then the question becomes whether Auto–Owners is legally obligated to pay for damages arising out of the tort action. In assessing Auto–Owners' duty to indemnify Eadon, we must determine whether there was an "occurrence" that caused "property damages," which were not excluded by any policy provision. We answer "yes" to all of these questions.

## B. Standard of Review

■■ "A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 46, 717 S.E.2d 589, 592 (2011) (citation omitted).

■ "In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless there is no evidence to reasonably support them." *Id.* at 46–47, 717 S.E.2d at 592 (citation omitted). However, an appellate court may make its own determination on questions of law and need not defer to the trial court's rulings in this regard. *Id.* at 47, 717 S.E.2d at 592.

## C. Propriety of the DJ Action

Auto–Owners argues the Court of Appeals erred in upholding the judge's denial of its Rule 60(b)(4)[2] and (5), SCRCP motions. Because the verdict in the tort action has been reversed, Auto–Owners claims there is no duty to indemnify

---

2. Although Auto–Owners references subsection 4, its argument is confined to subsection 5. However, even if properly argued, this subsection would not support Auto–Owners' contention as the underlying tort action was not void for lack of due process, subject matter jurisdiction, or personal jurisdiction. *See* Rule 60(b)(4), SCRCP ("On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding ... if the judgment is void."); *Linda Mc Co. v. Shore*, 390 S.C. 543, 703 S.E.2d 499 (2010) (recognizing that the definition of "void" under Rule 60(b)(4) only encompasses judgments from courts that failed to provide proper due process, lacked subject matter jurisdiction, or lacked personal jurisdiction).

Eadon. Auto–Owners maintains that the DJ action cannot be decided at this time as additional coverage issues may arise out of the retrial, such as new damages, whether Eadon is an insured, and evidence triggering policy exclusions.[3]

Rule 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

Rule 60(b)(5), SCRCP.

■ Because our appellate courts have not definitively addressed Rule 60(b)(5), we have looked to the federal courts' interpretation as our rule is similar to the federal rule.[4] Our research reveals that this rule has limited application and has rarely been applied. *See* 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2863 (3d ed. Supp.2012) (identifying cases where relief has been granted and denied based on Rule 60(b)(5) and stating, this ground is "rarely" relied upon as a basis to allow relief from judgment). Furthermore, in reviewing a decision with respect to Rule 60(b), this Court utilizes a deferential standard of review. *See Tri–County Ice & Fuel Co. v. Palmetto Ice Co.,*

---

3. In support of its argument, Auto–Owners relies on *Jourdan v. Boggs/ Vaughn Contracting, Inc.,* 324 S.C. 309, 476 S.E.2d 708 (Ct.App.1996), wherein Jourdan sued Boggs and SCDOT for injuries Jourdan suffered when he wrecked his motorcycle in a construction zone where Boggs, a paving contractor, was working for SCDOT. *Id.* at 311, 476 S.E.2d at 709. Boggs filed a cross-claim against SCDOT for equitable indemnification. *Id.* The trial court dismissed Boggs's claim. *Id.* The Court of Appeals reversed, finding that allegations in a complaint are not determinative of the right to equitable indemnification; rather, the right to indemnity "does not ripen until decided by the finder of fact." *Id.* at 313, 476 S.E.2d at 711. *Jourdan,* however, is not controlling because it does not preclude a declaratory judgment action once a concrete dispute arises that involves issues of law as in the instant case.

4. Note to Rule 60, SCRCP (stating that Rule 60 is drawn from the Federal Rule).

303 S.C. 237, 399 S.E.2d 779 (1990) (recognizing that a motion for relief from judgment pursuant to Rule 60(b) is addressed to the sound discretion of the trial judge, and this Court will not disturb the trial judge's decision absent an abuse of discretion).

With this background in mind, we find the judge and, in turn, the Court of Appeals properly concluded the DJ action was appropriate for judicial determination.

 Section 15–53–20 of the South Carolina Code identifies the purpose of the Uniform Declaratory Judgments Act ("the Act") and provides that courts "shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." S.C.Code Ann. § 15–53–20 (2005); *see* Rule 57, SCRCP ("The procedure for obtaining a declaratory judgment pursuant to Code §§ 15–53–10 through 15–53–140, shall be in accordance with these rules, and ... [t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."). The Act is to be liberally construed and administered to achieve its intended purpose "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." S.C.Code Ann. § 15–53–130 (2005). However, the Act does not require the courts to give purely advisory opinions as to the issues sought to be raised. *City of Columbia v. Sanders,* 231 S.C. 61, 97 S.E.2d 210 (1957). "[A]n issue that is contingent, hypothetical, or abstract is not ripe for judicial review." *Colleton County Taxpayers Ass'n v. Sch. Dist. of Colleton County,* 371 S.C. 224, 242, 638 S.E.2d 685, 694 (2006).

 Although an insurance contract may be construed either before or after a breach occurs, there must be a real or actual controversy between the litigants at the time of the institution of the DJ action. S.C.Code Ann. § 15–53–40 (2005); *Nelson v. Ozmint,* 390 S.C. 432, 702 S.E.2d 369 (2010).

 We find there was a justiciable controversy sufficient to implicate the Act given: (1) Eadon demanded Auto–Owners defend and indemnify the claim; (2) Auto–Owners denied portions of the claim; (3) definite and concrete issues exist regarding the adverse interests of Auto–Owners' and Eadon

with respect to liability under the CGL policy; and (4) the tort action is still pending.

Accordingly, we hold the Court of Appeals correctly affirmed the judge's denial of Auto–Owners' Rule 60 motion. *See* H.A. Wood, Annotation, *Application of Declaratory Judgment Acts to Questions in Respect of Insurance Policies,* 142 A.L.R. 8, § 3(c) (1943 & Supp.2012) (analyzing state and federal cases involving declaratory judgment actions and stating, "where the controversy is definite and concrete and involves the legal relations of parties who have adverse interests, as regards questions of liability under, and the application of, insurance policies, it has been held in numerous cases that an actual or justiciable controversy existed within the purview of the declaratory judgments acts"); *Assoc. Indem. Corp. v. Davis,* 45 F.Supp. 118 (D.Pa.1942) (finding declaratory judgment action was not rendered moot where the state supreme court reversed a judgment in favor of injured persons and ordered a new trial in a state court action growing out of an accident resulting from the operation of the insured automobile), *overruled on other grounds by,* 136 F.2d 71 (3rd Cir.1943).

▮▮▮ Despite this ultimate conclusion, we find the DJ decision regarding "property damages" is not proper for our consideration as the resolution of this issue is based on questions of fact that will be presented at trial rather than issues of law to be resolved at this juncture. *See* 4 Phillip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law,* § 11:84 (2002 & Supp.2012) ("What damages result from or arise out of the 'property damage' in any given situation is a question of fact."); *Penn Nat'l Sec. Ins. Co. v. Design–Build Corp.,* No. 2:11–cv–02043–PMD, 2012 WL 2712555 (D.S.C. July 9, 2012) (declining to grant summary judgment to insurer on duty to defend with respect to whether coverage existed for alleged damages for loss of use of the property and loss of profits as these issues were premature); *Guar. Nat'l Ins. Co. v. Beeline Stores, Inc.,* 945 F.Supp. 1510, 1514 (M.D.Ala.1996) ("Although the existence of a duty to defend may be established by the allegations in the injured party's complaint, the insurer's liability to the insured is ultimately established by what is developed at trial. So a determination of the duty to indemnify cannot be made at a

preliminary stage in the proceedings, when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy at issue."). Accordingly, we confine the remainder of our analysis to answering the questions regarding Eadon's status as an "insured" and whether there was an "occurrence" as required by the terms of the policy.

## D. Eadon's Status as an "Insured"

█ Auto–Owners asserts the Court of Appeals erred in finding that Eadon qualified as an insured under the CGL policy. In support of this assertion, Auto–Owners claims Rhodes and Piedmont should have been judicially estopped from arguing that Eadon was acting on behalf of the corporation when they conversely argued during the tort action that Eadon was subject to individual liability. Auto–Owners further contends that because Eadon was not directly involved in designing, manufacturing, installing, or inspecting the signs, the CGL policy did not provide coverage as any other actions taken by Eadon were performed in his individual rather than his covered, corporate capacity. Specifically, Auto–Owners points to Eadon's trial and deposition testimony wherein he testified that his only role in the corporation was to provide financial resources and procure insurance.

### 1. Judicial Estoppel

In rejecting Auto–Owners' judicial estoppel contention, the Court of Appeals found it failed to meet the fourth element of the applicable test. *Rhodes,* 385 S.C. at 99, 682 S.E.2d at 866. Specifically, the court found there was no evidence that any inconsistent position asserted by Rhodes was part of an intentional effort to mislead the court. *Id.* Additionally, the court found that Rhodes was not in privity with Auto–Owners or Eadon under the CGL policy. *Id.*

█ "Judicial estoppel is an equitable concept that prevents a litigant from asserting a position inconsistent with, or in conflict with, one the litigant has previously asserted in the same or related proceeding." *Cothran v. Brown,* 357 S.C. 210, 215, 592 S.E.2d 629, 631 (2004). "The purpose of the doctrine is to ensure the integrity of the judicial process, not to protect

the parties from allegedly dishonest conduct by their adversary." *Id.*

For the doctrine of judicial estoppel to apply, the following elements must be satisfied: (1) two inconsistent positions taken by the same party or parties in privity with one another; (2) the positions must be taken in the same or related proceedings involving the same party or parties in privity with each other; (3) the party taking the position must have been successful in maintaining that position and have received some benefit; (4) the inconsistency must be part of an intentional effort to mislead the court; and (5) the two positions must be totally inconsistent. *Id.* at 215–16, 592 S.E.2d at 632.

We agree with the Court of Appeals that the doctrine of judicial estoppel was inapplicable in the instant case because there was no privity of contract between Rhodes and Auto–Owners. *See Young v. Smith,* 168 S.C. 362, 167 S.E. 669 (1933) (recognizing that no privity of contract exists between an insurance company and a third party who may benefit from indemnification unless the insurance contract specifically lists the third party as a beneficiary). Moreover, Auto–Owners cannot rely on Rhodes's "inconsistent" theories as the decision in the tort action has been reversed and, thus, the proceeding vacated. Accordingly, any reference to Rhodes's trial testimony, the jury charge, or the jury's verdict to support the contention that Eadon was subject to individual liability is misplaced.

### 2. Executive Officer as Insured

The CGL policy, which lists C & B Fabrications, Inc. and Low Country Signs, Inc., as its insureds on the Declarations page, provides:

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

. . . .

c. An organization other than a partnership or joint venture, you are insured. Your executive officers and

directors are insured, but only with respect to their duties as your officers or directors. . . .

1. Each of the following is also an insured:

a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

. . .

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

▮▮▮▮▮ In interpreting this policy provision, the Court adheres to the general rules of contract construction. *M & M Corp. of S.C. v. Auto–Owners Ins. Co.*, 390 S.C. 255, 259, 701 S.E.2d 33, 35 (2010). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009). " 'Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning.' " *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008) (quoting *Sloan Constr. Co. v. Cent. Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 185, 236 S.E.2d 818, 819 (1977)).

▮▮▮ Significantly, during the DJ action, the parties entered into a stipulation to resolve any ambiguity regarding the names of the business entities intended by the parties to be covered by the CGL policy. This stipulation provided:

For purposes of this Declaratory action only, the named insureds on Auto–Owners' policies are reformed to C & B Fabricators, Inc. and Lowcountry Signs & Fabrication, Inc., both d/b/a C & B Fabrication, trade name of these corporations.

In view of this stipulation and the plain terms of the CGL policy, we agree with the conclusion of the Court of Appeals that Eadon was an insured. However, in reaching this conclusion, we find it was unnecessary for the court to consider a distinction between the actions of "executive officers and directors" and "employees" for the purposes of the CGL policy.

Instead, we find the analysis to be more straightforward. Rhodes identified the defendant in the tort suit as "Marion L. Eadon, d/b/a C & B Fabrication." Based on the stipulation that C & B Fabrication was the trade name of Eadon's corporation, Auto–Owners acknowledged that Rhodes sued Eadon in his corporate capacity. Thus, it is unnecessary to delve into the specific actions performed by Eadon to determine whether he was an insured. The fact that Eadon operated his business under another name did not create a separate legal entity for insurance purposes. *See O'Hanlon v. Hartford Accident & Indem. Co.*, 639 F.2d 1019 (3d Cir.1981) (holding that where insured purchases policy in trade name, policy will be viewed as if issued in his given name); *Bushey v. N. Assurance Co. of Am.*, 362 Md. 626, 766 A.2d 598, 603 (2001) (stating that "sole proprietorship form of business provides 'complete identity of the business entity with the proprietor himself'" (citation omitted)); *cf. Providence Wash. Ins. Co. v. Valley Forge Ins. Co.*, 42 Cal.App.4th 1194, 1201, 50 Cal.Rptr.2d 192 (Cal.Ct.App.1996) ("In short, it is commonly held that '[a]n individual who does business under several different names, and whose insurance policies are written out to the individual doing business under certain trade names, is not a separate entity in his capacity in operating each of such businesses, but rather there is only one legal entity, the individual, for the purposes of insurance coverage.'" (quoting 46 C.J.S. *Insurance* § 948 (1993))).

### E. "Occurrence"

▆▆▆ Auto–Owners asserts the Court of Appeals erred in finding the removal of the two signs that did not fall constituted an "occurrence" as defined by the policy. The policy states, in pertinent part:

**Coverage A. Bodily Injury and Property Damage Liability**

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

. . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

. . . .

**Section V–Definitions**

. . . .

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Although not defined by the policy, this Court in a case involving an identical CGL policy defined "accident" as "[a]n unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt." *Green v. United Ins. Co. of Am.*, 254 S.C. 202, 206, 174 S.E.2d 400, 402 (1970).

In finding an "occurrence," both the judge and the Court of Appeals referenced this Court's decision in *L–J, Inc. v. Bituminous Fire and Marine Insurance Company*, 366 S.C. 117, 621 S.E.2d 33 (2005) and cases cited therein, particularly *High Country Associates v. New Hampshire Insurance Company*, 139 N.H. 39, 648 A.2d 474 (1994).[5] Based on these cases, the courts concluded that the "damage alleged by Rhodes [was]

---

5. In *High Country*, a condominium homeowners' association sued the condominium builder seeking damages due to the negligent construction of the buildings. *High Country*, 648 A.2d at 475. This suit alleged damages due to continuous moisture intrusion from a subcontractor's defective installation of siding resulting from moisture seeping into the buildings, which caused decay of the interior and exterior walls and loss of structural integrity to the condominiums. *Id.* at 476. The builder filed a declaratory judgment action seeking indemnification from its insurer under a CGL policy. *Id.* The New Hampshire Supreme Court found in favor of the insureds on the ground the claim was not simply one for damages resulting from faulty workmanship but, rather, was a claim for negligent construction resulting in property damage to other property. *Id.* at 477. In so ruling, the court broadly construed what would constitute an "occurrence" under the policy, stating that " '[o]ccurrence' has a broader meaning than 'accident' because 'occurrence' includes 'an injurious exposure to continuing conditions as well as a discrete event.' " *Id.* at 477–78 (quoting *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800, 802 (1986)).

not merely ... damages sustained to the work product alone, due to faulty workmanship, but also to the 'other property' of Rhodes." *Rhodes*, 385 S.C. at 101, 682 S.E.2d at 867.

As noted by the judge, Auto–Owners conceded that the falling of the first sign constituted an "occurrence." The parties diverge as to whether this occurrence precipitated the removal of the two remaining signs. In other words, was the loss of the remaining two signs and the consequential damages flowing therefrom causally linked to the sign that fell and, thus, constituted property damage caused by an occurrence under the policy. In analyzing these divergent positions, it is necessary to review the case law progression of *L–J* and its progeny.[6]

In *L–J*, this Court adhered to the majority rule that "faulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy." *L–J, Inc.*, 366 S.C. at 121, 621 S.E.2d at 35. The Court reasoned that "faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions." *Id.* at 123, 621 S.E.2d at 36. The Court noted that a "CGL policy may, however, provide coverage in cases where faulty workmanship causes a third party bodily injury or damage to other property, *not in cases where faulty workmanship damages the work product alone.*" *Id.* at 123 n. 4, 621 S.E.2d at 36 n. 4.

Four years later, the Court decided *Auto Owners Insurance Company, Inc. v. Newman*, 385 S.C. 187, 684 S.E.2d 541 (2009), wherein it relied on the analysis in *L–J* and found that a "subcontractor's negligence resulted in an 'occurrence' falling within the CGL policy's initial grant of coverage for the resulting 'property damage' to the [home]." *Id.* at 194, 684 S.E.2d at 545. In so ruling, the Court gave effect to the subcontractor exception to the "your work" exclusion in the standard CGL policy and recognized that this exclusion did not apply "if the damaged work or the work out of which the

6. We note the General Assembly statutorily defined the term "occurrence" on May 17, 2011. S.C.Code Ann. § 38–61–70 (Supp.2012). This definition, however, does not affect the disposition of the instant case as this Court recently ruled that it could only be applied prospectively. *Harleysville Mut. Ins. Co. v. State of South Carolina*, 401 S.C. 15, 736 S.E.2d 651 (2012).

damage arises was performed on [policyholder's behalf] by a subcontractor." *Id.* at 195, 684 S.E.2d at 545.

Recently, in *Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Company*, 395 S.C. 40, 717 S.E.2d 589 (2011), this Court adhered to its decision in *Newman* and clarified that "negligent or defective construction resulting in damage to otherwise non-defective components may constitute 'property damage,' but the defective construction would not." *Id.* at 50, 717 S.E.2d at 594. The Court further found that, "the expanded definition of 'occurrence' is ambiguous and must be construed in favor of the insured." *Id.*

Based on this line of cases, we are now confronted with the question of whether *Crossmann's* expansive view of an "occurrence" is limited to progressive property damage cases. Unlike the "normal" defective construction case where damage from faulty workmanship is obvious and directly related, the mandated removal of the two additional signs in the instant case is more tangential.

After careful consideration of the implications of *Crossman*, we find there was an "occurrence" that triggered coverage under the CGL policy. In reaching this conclusion, we view the fallen sign and the removal of the remaining two signs under a continuum of an "occurrence," as this is analogous to the CGL cases involving "continuous or repeated exposure to substantially the same general harmful conditions."

Stated another way, we find the existence of an "occurrence" as the removal of the remaining two signs would not have occurred "but for" the fallen sign as this accident precipitated the mandate issued by the SCDOT. Furthermore, because the signs were simultaneously constructed, we view this as a single occurrence with progressive damage. Thus, the degree of "fortuity" is present and, in turn, the potential for coverage under the CGL policy. *See D.R. Sherry Const., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899 (Mo.2010) (noting that the determinative inquiry into whether there was an "occurrence" or "accident," for purpose of coverage under a liability insurance policy, is whether the insured foresaw or expected the injury or damages); *see also Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 93 Wash.2d 210, 608 P.2d 254

(1980) (concluding insured's unexpected "mismanufacture" of concrete panels requiring their removal and repair was an "accident"); *Doe 1 v. Archdiocese of Milwaukee*, 330 Wis.2d 666, 794 N.W.2d 468 (Wis.Ct.App.2010) (recognizing that the focus of determining whether events are accidental for insurance purposes is not whether a specific result was accidental but, rather, whether the cause of the damage was accidental). Finally, we believe this conclusion effectuates the purpose of the CGL policy as we cannot discern how there would ever be coverage if the "occurrence" was limited to an accident involving only one sign.

Although we find an "occurrence," which implicates coverage under the policy, we emphasize that this decision does not express our opinion regarding "property damages" as the presentation of different evidence on retrial may establish new coverage issues, including policy exclusions.

### III. Conclusion

Based on the foregoing, we find the Court of Appeals correctly affirmed the judge's denial of Auto–Owners' motion pursuant to Rule 60(b), SCRCP. We hold the declaratory judgment action was procedurally proper save for a ruling on issues regarding property damages as there are related questions of fact that must be decided by a jury on retrial. Additionally, we affirm the Court of Appeals' determination that Auto–Owners has a duty to indemnify Eadon as he is an insured under the policy. Finally, we agree with the Court of Appeals that the removal of the remaining two signs constituted an "occurrence" for purposes of the policy as the "occurrence" of the first fallen sign, which was stipulated to by Auto–Owners, precipitated their removal. Accordingly, the decision of the Court of Appeals is

**AFFIRMED IN PART AND REVERSED IN PART.**

KITTREDGE, J., Acting Justices JAMES E. MOORE and WILLIAM P. KEESLEY, concur. PLEICONES, J., concurring in result only.