660 S.E.2d 271

Ex Parte Brandon SMITH, as Personal Representative of the Estate of Tracy Smith, Deceased, Appellant

v.

AUTO–OWNERS INSURANCE COMPANY, Respondent,

In re Lewis Lesesne Scott, Plaintiff,

v.

Wayne K. McGraw, Jr., Defendant.

No. 4363.

Court of Appeals of South Carolina.

Submitted Dec. 1, 2007.

Filed Jan. 2, 2008.

Withdrawn, Substituted and Refiled March 31, 2008.

Daniel Lawrence Prenner, of Charleston, for Appellant.

Robert Eric Davis, of Spartanburg, for Respondent.

CURETON, A.J.:

In this action to recover under a policy of underinsured motorist coverage, the Estate of Tracy Smith (the Estate) argues the statutory definition of "insured" does not restrict an insured from having more than one household for purposes of insurance coverage. We affirm.[1]

## FACTS

Ernest and Brenda Smith (collectively the Smiths) purchased land in Spartanburg County and established a residence there (the Spartanburg County home) in the 1970s. Later, the Smiths subdivided some of the acreage and deeded ownership of ten acres to each of their four sons. Ernest retained, in his name alone, ownership of this home and the land immediately surrounding it. In 1989, while still living at

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

the Spartanburg County home, the Smiths purchased a second home in Laurens County (the Laurens County home).

The Smiths lived at the Spartanburg County home, periodically visiting the Laurens County home as their "summer home." When Brenda retired in November of 1999, she moved to the Laurens County home. While he visited his wife in Laurens County on occasion, Ernest continued to work full-time and lived at the Spartanburg County home. Ernest retired in March of 2003 and moved to the Laurens County home with Brenda. However, Ernest continued to work part-time in Spartanburg County after his retirement. Ernest occasionally stayed in the Spartanburg County home when working and kept some personal items and clothing there. Ernest did not have his driver's license updated to reflect his Laurens County address. However, Ernest stated he "considered [his] household after March 2003 to be with [his] wife" at the Laurens County home.

Tracy Smith was the Smiths' 42–year–old son. In May of 2004, Tracy was living in the Spartanburg County home. He would occasionally visit his parents at the Laurens County home, but he did not live there. On May 24, 2004, Tracy was a passenger in an automobile owned and driven by Wayne K. McGraw, Jr. McGraw's vehicle collided with Lewis Lesesne Scott's vehicle, and Tracy was killed in the accident. Tracy had no automobile insurance at the time of his death.

At the time of Tracy's death, Ernest owned and paid taxes on the Spartanburg County home. He did not maintain insurance on that home. The Smiths insured their automobiles through Auto–Owners Insurance Company (Auto–Owners). The automobile insurance policy listed the Laurens County home as the Smiths' residence.

After the accident, Scott sued McGraw. Tracy's son, Brandon Smith, intervened on behalf of the Estate and subsequently joined Auto–Owners as a defendant. Scott and McGraw settled with each other and with the Estate and are not parties to this appeal. The Estate and Auto–Owners submitted the issue of "whether Tracy Smith qualifies as an insured under Ernest and Brenda Smith's underinsured motorist coverage" to the trial court for determination. In an order dated September 28, 2006, the circuit court ruled Tracy Smith was

not an insured party under his parents' policy. This appeal followed.

## STANDARD OF REVIEW

The determination of coverage under an insurance policy is an action at law. *Nationwide Mut. Ins.Co. v. Prioleau*, 359 S.C. 238, 241, 597 S.E.2d 165, 167 (Ct.App.2004); *see also Kizer v. Kinard*, 361 S.C. 68, 71, 602 S.E.2d 783, 785 (Ct.App.2004) (determination of whether underinsured motorist coverage applies is an action at law). In an action at law, tried without a jury, the appellate court's standard of review extends only to the correction of errors of law. *Pope v. Gordon*, 369 S.C. 469, 474, 633 S.E.2d 148, 151 (2006). We will not disturb the trial court's findings of fact unless those findings are wholly unsupported by the evidence or controlled by an erroneous conception or application of the law. *Gordon v. Colonial Ins. Co. of Cal.*, 342 S.C. 152, 155, 536 S.E.2d 376, 378 (Ct.App.2000).

The determination of resident relative status is a question of fact, and thus, we will not disturb the circuit court's ruling if the record contains any evidence supporting it. *Id.* at 155, 536 S.E.2d at 378.

## LAW/ANALYSIS

Estate argues the circuit court erred in ruling that Tracy Smith was not an insured resident of his parents' household. We disagree.

In South Carolina, the definition of "insured" includes "relatives" of the named insured and his or her spouse, as long as those relatives are "resident[s] of the same household." S.C.Code Ann. § 38–77–30(7) (2002). In this case, no party disputes that Tracy was a relative of the Smiths. A determination of whether Tracy qualified as an insured under his parents' policy necessarily requires an examination and a comparison of where Tracy and each of the named insureds resided. The circuit court engaged in factfinding concerning Ernest and Tracy's presence at both the Spartanburg County and Laurens County homes and ruled Tracy did not reside in the same household as the Smiths. Therefore, because nei-

ther party disputed Tracy lived at the Spartanburg County home, the circuit court's order implicitly ruled that Ernest resided in the Laurens County household.

Section 38–77–30(7) of the South Carolina Code defines "insured" to include both the insured person or persons named in a policy and "while resident of the same household, the spouse of any named insured and relatives of either." No statute provides guidance concerning whether an insured may maintain more than one household simultaneously. Although the courts have contemplated the meaning of "resident relative" on numerous occasions,[2] the issue of whether an insured may reside in multiple households simultaneously is one of first impression. Our task here is limited to determining whether facts in the record supported the circuit court's finding the Smiths and Tracy did not reside in the same household. Consequently, we do not reach the issue of whether an insured may reside in multiple households.

The circuit court found the evidence conclusively established Tracy and his parents resided in two separate households in May 2004. To reach this conclusion, the circuit court necessarily undertook a two-prong analysis. First, the circuit court determined where each of the Smiths resided. The record reflects that in May 2004, Tracy's only residence was the Spartanburg County home. Tracy occasionally visited his parents at the Laurens County home but did not live there. In May 2004, Brenda's only residence was the Laurens County home. In May 2004, Ernest lived at the Laurens County home with Brenda, having moved there from the Spartanburg County home when he retired in March of 2003. However, Brenda testified that Ernest kept clothes, toiletries, and other items at the Spartanburg County home for his personal use

---

2. *See, e.g., Buddin v. Nationwide Mut. Ins. Co.,* 250 S.C. 332, 340, 157 S.E.2d 633, 637 (1967) (asserting nephew who actively participated in uncle's household activities and who did not intend to live elsewhere was a resident relative of uncle); *Auto–Owners Ins. Co. v. Horne,* 356 S.C. 52, 68, 586 S.E.2d 865, 874 (Ct.App.2003), *cert. denied* August 4, 2004 (finding child of divorced parents was not a resident relative of her non-custodial parent's household); *Auto Owners Ins. Co. v. Langford,* 330 S.C. 578, 584, 500 S.E.2d 496, 499 (Ct.App.1998) (holding grandchild and great-grandchild who occasionally visited named insured were not "insureds").

when he stayed there following his retirement. Ernest maintained duplicate items at the Laurens County home.

The conflict in this matter revolves around the time Ernest spent at the Spartanburg County home, the time Ernest resided in the Laurens County home, and his intention with respect to these homes and his son. Because the record supports the assertions that Ernest resided in both homes, the circuit court was required to proceed to the second prong of its analysis.

In the second prong of the analysis, the circuit court applied the *Buddin* standard of "one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently." 250 S.C. at 339, 157 S.E.2d at 636. We note that in 1996, our supreme court adopted a similar but somewhat more stringent approach to determining residency. *State Farm Fire & Casualty Co. v. Breazell,* 324 S.C. 228, 478 S.E.2d 831 (1996). Under the *Waite* test enunciated in *Breazell,* a person resides in a household with another if he or she:

> 1) liv[es] under the same roof; 2) in a close, intimate, and informal relationship, and 3) where the intended duration of the relationship is likely to be substantial, where it is consistent with the informality of the relationship and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon.

*Breazell,* 324 S.C. at 231, 478 S.E.2d at 832 (citing *A.G. by Waite v. Travelers Ins. Co.,* 112 Wis.2d 18, 331 N.W.2d 643 (Ct.App.1983)).

In applying the *Waite* test to Ernest's two possible households, we agree with the circuit court that Ernest was a resident of the Laurens County home and was a temporary, transient visitor to the Spartanburg County home. *Waite* requires residents to "liv[e] under the same roof . . . in a close, intimate, and informal relationship" that anticipates both a substantial length and some durability. *Id.* Brenda and Ernest lived in the Laurens County home together as husband and wife, thus satisfying the first two factors. Ernest considered his home to be with Brenda at the Laurens County home.

His purpose in leaving that home was to work, and he returned there when not working. Ernest and Brenda's living arrangements in the Laurens County home also satisfied the third factor, that the relationship be lengthy and durable. Using the Laurens County address, Ernest and Brenda purchased homeowners and automobile insurance, filed joint tax returns, received mail, and paid bills. These acts clearly satisfy the final factor, confirming Ernest's residency at the Laurens County home under *Waite.*

By contrast, Ernest's presence at the Spartanburg County home does not appear to satisfy all of the *Waite* factors for residency. Ernest and Tracy did indeed live together, at least for part of each week. Ernest's work schedule necessitated his visits to Spartanburg County. Depending upon his employer's needs, he would be in Spartanburg between two and four days per week. With regard to the second *Waite* factor, Ernest and Tracy appear to have enjoyed a "close, intimate, and informal relationship," given that they were father and son and the record does not indicate that their living arrangement included any restrictions or formal division of household responsibilities. However, this relationship fails to satisfy the third factor. No evidence in the record indicates Ernest and Tracy intended their living arrangement to be substantially long or durable or that they treated their living arrangement as anything but a matter of temporary convenience. Ernest and Tracy did not insure their automobiles together or share the responsibilities of taxes or household bills. Ernest did not insure the Spartanburg County home at all. Although Ernest may have spent up to four nights per week in the Spartanburg County home, it appears he stayed there merely as a matter of convenience and in lieu of renting a hotel room.

Therefore, the circuit court did not err in finding Ernest had only one household in Laurens County that he shared with his wife. His use of the Spartanburg County home did not constitute maintenance of a second household, and Tracy did not qualify as an insured under his parents' automobile insurance coverage.

## CONCLUSION

The circuit court did not err in finding Tracy did not qualify as an insured under his parents' automobile insurance cover-

age.  The record indicates Tracy lived in Spartanburg County and his parents lived in Laurens County.  Further, Ernest's occasional visits to the Spartanburg County home did not constitute establishment of a household with Tracy.  Therefore, Tracy was not an insured under his parents' policy.  Accordingly, the order of the circuit court is

**AFFIRMED.**

HUFF and PIEPER, JJ., concur.