**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Stancel E. Kirkland and El Cid Holdings, LLC,
Respondents,

v.

Robert Wolfson, Appellant.

Appellate Case No. 2019-000203

---

Appeal From Beaufort County
Marvin H. Dukes, III, Master-in-Equity and Special
Circuit Court Judge

---

Opinion No. 2022-UP-155
Submitted February 1, 2022 – Filed March 30, 2022

---

**AFFIRMED**

---

H. Fred Kuhn, Jr., of Moss & Kuhn, P.A., of Beaufort,
for Appellant.

Eugene H. Matthews, of Richardson Plowden &
Robinson, P.A. of Columbia; Ralph N. Riley, Jr. and S.
Jahue Moore, of Moore Taylor Law Firm, of West
Columbia; and Maryann Blake, of Woodard & Butler,
LLC, of Walterboro, all for Respondents.

---

**PER CURIAM:** Stancel E. Kirkland and El Cid Holdings, LLC, filed this action against Robert Wolfson[1] for the declaration of rights under a contract. Wolfson appeals, arguing the master-in-equity erred in (1) finding Wolfson defaulted on the contract by failing to make payment; (2) not finding his failure to tender payment was justified and the contract did not mandate "time is of the essence"; (3) not finding Kirkland's failure to provide notice of default delayed the grace period for making payment; (4) finding the note and security agreement's self-executing transfer provision was enforceable; and (5) failing to find the provision was a forfeiture or penalty. We affirm.

## FACTS

Kirkland and Wolfson were each 50% owners in Old South Properties, Inc. (OSP). Wolfson's background was in real estate sales and development, and Kirkland was an attorney. Wolfson was the managing partner of OSP, which had a sales office on the grounds of Bull Point Plantation. Kirkland wanted out of OSP in part because there were two pending lawsuits against Wolfson by Vivian's Island Plantation and Bindon Plantation, LLC. S. Jahue Moore represented Kirkland, Bindon Plantation, and Vivian's Island. The Bindon Plantation action resulted in a judgment against Wolfson for $28,500, and Moore testified that during the Vivian Island trial, the court asked the parties to attempt to settle during lunch. At a nearby restaurant, the parties agreed to a handwritten contract and signed it on May 21, 2017. The contract provided, *inter alia*, the following:

> 3. The Bindon [j]udgment [a]gainst Wolfson shall be satisfied immediately.
>
> 4. Satisfaction of the Bindon [j]udgment is the [r]esponsibility of Kirkland.
>
> 5. Wolfson shall pay Kirkland [$]80,000 cash on or before 3/1/18.
>
> 6. Wolfson shall also pay Kirkland [$]10,000 on or before 1/1/19.

---

[1] Old South Properties, Inc. and Bull Point Plantation Property Owners Association, Inc., two of the original defendants, are no longer parties.

7. Upon payment of the [$]90,000 mentioned in 5 and 6 above[,] Kirkland transfers his interest in Old South Properties to Wolfson.

8. Wolfson shall have the [$]90,000 obligation to Kirkland secured by a mortgage on a lot owned by Bob Wolfson valued at least $80,000.

9. Old South Properties shall also guarantee the obligations of Wolfson and Wolfson shall provide a security [a]greement as to his interest in Old South Properties.

10. Kirkland will withdraw his request for a Receiver and shall not pursue it so long as Wolfson is current under this Agreement.

The court adopted the contract as an order, and the case was dismissed. Wolfson signed a note and security agreement dated July 5, 2017, but did not execute a mortgage. The note and security agreement provided, "Should there be a default, Robert Wolfson shall have 30 days from the day of default to cure said default. Following any default, Robert Wolfson's interest in Old South Properties, Inc. shall be the exclusive property of Stancel E. Kirkland." Kirkland satisfied a $28,500 judgment against Wolfson and withdrew a pending motion for the appointment of a receiver over Wolfson's assets as part of the agreement.

In January 2018, Wolfson filed an action against Billy Gavigan, an unrelated party who owned El Cid Holdings, LLC. On March 1, 2018, the date Wolfson's first payment was due, Wolfson emailed Moore, stating he was not able to meet the payment deadline because he was involved in the lawsuit against Gavigan. Wolfson failed to make the $80,000 payment due on March 1, 2018, or within the 30-day grace period. Wolfson claimed he failed to make the payment due to his concern regarding possible third-party liens on OSP.[2]

_____

[2] One lien was filed on April 16, 2018, by Bull Point Plantation Property Owners' Association based on more than $39,000 in past-due assessments. In addition, a mortgage dated February 16, 2018 and securing a $97,000 loan, was recorded on March 6, 2018. The mortgage was given to HCG Weight Loss Center, Inc., a company owned by Wolfson's son. Theresa Ann O'Connell, Wolfson's former

Kirkland filed this action in April of 2018, alleging Wolfson was in default and the HCG Weight Loss Center mortgage was fictitious. In May, Kirkland assigned his interest in the agreement to El Cid for $45,000 and "a division of" any other proceeds received.

In a nonjury trial before the master, Moore testified OSP experienced problems with foreclosures, the Homeowners' Association, and "all kinds of mess"; thus, Kirkland wanted to sever relations with Wolfson. Moore also testified that when he and Kirkland met with Wolfson in December of 2017, Wolfson said he would pay Kirkland, but he refused to give a date and left the meeting. According to Moore, the shares in OSP were worth far more than $90,000, but Kirkland was willing to give up the extra value to separate from Wolfson. Moore acknowledged that Wolfson acted pro se while forming the contract, and explained no notice of default was given because the contract did not require one.

Wolfson testified he borrowed money from his son to pay Kirkland; thus, he gave his son the mortgage. Wolfson claimed he always intended to buy Kirkland's shares in OSP, did not repudiate the contract, and never received a notice of default. During cross-examination, Wolfson admitted he refused to make the $80,000 payment on or before March 31, 2018, which he alleged was based on the advice of counsel and concern for liens on the property. In his deposition, Wolfson agreed he was an experienced businessman and could have asked for other provisions in the contract.

By order filed November 15, 2018, the master found Kirkland and Wolfson were sophisticated and experienced businessmen at the time the contract was formed. The master also found Wolfson had "superior knowledge of the books, operations, assets[,] and liabilities" of OSP. The master concluded Wolfson was in default, the default activated the clause in the note and security agreement that transferred his interest in OSP to Kirkland, and as of April 1, 2018, Kirkland was the exclusive owner of OSP. Because Kirkland transferred his interest in OSP to El Cid, the master found El Cid was the sole and exclusive owner of OSP. The master found the mortgage Wolfson gave to HCG Weight Loss Center had been satisfied; thus, the master ordered Wolfson to take all actions necessary to have the satisfaction of mortgage filed. The master denied Wolfson's motion for a new trial or to reconsider. This appeal follows.

bookkeeper, testified the proceeds from the $97,000 mortgage were sent to Wolfson's son's company, and the mortgage was still on the OSP books.

**STANDARD OF REVIEW**

A declaratory judgment action involving the interpretation of a contract is an action at law. *Barnacle Broad., Inc. v. Baker Broad., Inc.*, 343 S.C. 140, 146, 538 S.E.2d 672, 675 (Ct. App. 2000). "In an action at law, tried without a jury, the appellate court standard of review extends only to the correction of errors of law." *Pope v. Gordon*, 369 S.C. 469, 474, 633 S.E.2d 148, 151 (2006). Under this standard of review, the appellate court "will not disturb the trial court's findings of fact unless those findings are wholly unsupported by the evidence or controlled by an erroneous conception or application of the law." *Smith v. Auto-Owners Ins. Co.*, 377 S.C. 512, 515, 660 S.E.2d 271, 272 (Ct. App. 2008).

**LAW/ANALYSIS**

**A.     Materiality of Breach**

Wolfson argues the master erred in finding he defaulted where his failure to pay was not a material breach justifying rescission of the contract provision that required Kirkland to transfer his interest in OSP to Wolfson. We disagree.

"One cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties." *S.C. Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC*, 379 S.C. 645, 655, 667 S.E.2d 7, 12 (Ct. App. 2008). In construing a contract, the court "must first look at the language of the contract to determine the intentions of the parties." *C.A.N. Enters., Inc. v. S.C. Health & Human Servs. Fin. Comm'n*, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988). "[I]f the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 498, 649 S.E.2d 494, 501 (Ct. App. 2007).

"Rescission is . . . abrogation or undoing of [a contract] from the beginning, which seeks to create a situation the same as if no contract ever had existed." *Gov't Emps. Ins. Co. v. Chavis*, 254 S.C. 507, 516, 176 S.E.2d 131, 135 (1970). "When a party elects and is granted rescission as a remedy, he is entitled to be returned to status quo ante." *First Equity Inv. Corp. v. United Serv. Corp. of Anderson*, 299 S.C. 491, 496, 386 S.E.2d 245, 248 (1989). A breach is material and justifies rescission when the breach is "so fundamental and substantial as to defeat the purpose of the contract." *Ackerman v. McMillan*, 314 S.C. 268, 271, 442 S.E.2d 618, 620 (Ct. App. 1994).

We find the master did not err in finding Wolfson was in default.  The master found it was undisputed Wolfson failed to comply with the payment schedule in the contract; thus, Wolfson was in default.  We also find the breach was material.  The purpose of the contract was to dissolve the co-ownership of OSP.  The master gave effect to all provisions in the contract by reading the contract as a whole.  In addition, we do not find a rescission.  A rescission would be a return to the status quo, which was a 50/50 partnership in OSP.  Rather, Kirkland sought to sell his ownership interest in OSP, or in the event Wolfson did not pay him, to acquire full ownership of OSP.

**B.      Justification for Delay of Payment/Time Is of the Essence**

Wolfson next argues the master erred in not finding his delay in tendering payment was justified because there was a lien on OSP and the contract did not include the clause, "time is of the essence."  We disagree.

"It is a very old question whether time is of the essence of a contract, and the reason is, the application of the doctrine depends upon innumerable circumstances.  The facts determine the application, and seem therefore to determine the law." *Jennings v. Bowman*, 106 S.C. 455, 459−60, 91 S.E. 731, 732 (1917).  "Generally, in a court of law the time in which a thing is to be done is as much a part of the contract as any other feature of it."  *Id.* at 460, 91 S.E. at 732.

The master found that although Wolfson claimed he was not complying with the payment schedule based on his concern about a third-party lien, "nothing in the contract allowed for any extensions or modifications under such circumstances."  The contract specified the time payment was due.  Moore testified Wolfson was informed that Kirkland was not amenable to modifying the contract as to the time payment was due.  The master ruled "solely on the four corners of the unambiguous contract and upon the undisputed and unexcused failure to pay."  We find no error by the master.  *See Eldridge v. Eldridge*, 398 S.C. 113, 118, 728 S.E.2d 24, 26 (2012) ("In an action at law tried by a master, an appellate court will affirm the master's factual findings if there is any evidence in the record which reasonably supports them.").

**C.      Notice of Default**

Wolfson argues the master erred in not extending the grace period for making payment due to Kirkland's failure to provide notice of default.  We disagree.

Neither the written agreement nor the note and security agreement provided for notice in the event of default. Wolfson relies on two South Carolina cases dealing with acceleration clauses in installment notes. *See Allendale Furniture Co. v. Carolina Commercial Bank*, 284 S.C. 76, 77, 325 S.E.2d 530, 530–531 (1985) (permitting the bank to accelerate all note payments without notice where the contract provided for acceleration without notice); *Hendrix v. Franklin*, 292 S.C. 138, 139, 355 S.E.2d 273, 274 (Ct. App. 1986) (finding notice of acceleration was provided by the initiation of legal proceedings despite the lack of a provision providing for acceleration).

We find no error in the master's failure to find the lack of notice delayed Wolfson's time to make payment. The contract in this case was not an installment note. *See Installment Land Contract*, Black's Law Dictionary 395 (10th ed. 2014) (defining an installment land contract as "[a] contract for the sale of land providing that the buyer will . . . pay the purchase price in installments over time"). Rather, this contract was for the transfer of ownership to one partner of a jointly-owned business. The parties to this contract were experienced businessmen, and Wolfson admitted he could have requested additional terms to the agreement. Although the contract did not include a notice clause, Moore testified no concerns about such a clause were raised at the time the contract was drafted. In addition, the purpose of a notice clause, to provide notice to a late borrower of pending consequences, was known to Wolfson, who attempted to renegotiate the contract. The law is "well-established" that "'no one needs notice of what he already knows.'" *Dicks & Gillam, Inc. v. Cleland*, 295 S.C. 124, 128, 367 S.E.2d 430, 433 (Ct. App. 1988) (quoting *Walker v. Preacher*, 185 S.C. 462, 467, 194 S.E. 868, 870 (1938)); *see Hammond v. Tilghman Lakes, Inc.*, 295 S.C. 152, 153, 367 S.E.2d 446, 447 (Ct. App. 1988) ("The purpose of a notice of default is to give the party allegedly in default an opportunity to cure the default and meet his obligation[, and it] . . . also informs the defaulting party that the other is not waiving his right to performance of the contract.").

## D.    Lack of Consideration

Wolfson argues the master erred in enforcing the self-executing transferring provision in the note and security agreement where there was no consideration. We disagree.

"The necessary elements of a contract are offer, acceptance, and valuable consideration." *Hennes v. Shaw*, 397 S.C. 391, 399, 725 S.E.2d 501, 505 (Ct. App.

2012). "Valuable consideration to support a contract may consist of some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 331 S.C. 385, 389, 503 S.E.2d 184, 186 (Ct. App. 1998).

Wolfson admitted in his deposition that the note and security agreement were referenced in the contract. We find no error in the master's finding that the two documents created one contract; thus, the provision in the security agreement was part of the contract. In addition, Moore testified the $28,500 judgment against Wolfson was satisfied and the pending motion for the appointment of a receiver over Wolfson's assets was withdrawn as required by the contract. Thus, we also find no error in the master's finding that the contract provided valuable consideration to each party.

## E.    Forfeiture

Wolfson argues the master erred in failing to find the self-executing transferring provision in the note and security agreement was an unenforceable forfeiture or penalty. We disagree.

In *Lewis v. Premium Investment Corp.*, our supreme court stated the following:

> Parties to a contract may stipulate as to the amount of liquidated damages owed in the event of nonperformance. Where, however, the sum stipulated is plainly disproportionate to any probable damage resulting from breach of contract, the stipulation is an unenforceable penalty. Equity will not enforce a penalty for breach of contract.

351 S.C. 167, 172, 568 S.E.2d 361, 363 (2002) (internal citations omitted).

In this case, we find no error by the master in declining to find the transfer provision constituted a penalty or forfeiture. If Wolfson paid the $90,000, he received Kirkland's one-half interest in OSP. Although Moore testified $90,000 was less than the value of Kirkland's interest, it was the amount Wolfson was required to pay to obtain Kirkland's interest. In addition, Kirkland's interest was sold to El Cid for only $45,000 and "a division of" any other proceeds received. As consideration, Kirkland satisfied the judgment against Wolfson, dismissed the

pending action, and withdrew a motion for the appointment of a receiver. We find no error by the master in declining to find a penalty or forfeiture.

**CONCLUSION**

Based on the foregoing, the master's order is

**AFFIRMED.**[3]

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.