# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Renewable Water Resources, Respondent,

v.

Insurance Reserve Fund, a Division of the State Fiscal Accountability Authority of South Carolina, Appellant.

Appellate Case No. 2020-000669

———————

Appeal from Greenville County
Charles B. Simmons, Jr., Master-In-Equity

———————

Opinion No. 6042
Heard September 13, 2023 – Filed January 3, 2024

———————

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

———————

Andrew F. Lindemann, of Lindemann Law Firm, P.A., of Columbia, for Appellant.

William Stevens Brown, V and Miles Edward Coleman, both of Nelson Mullins Riley & Scarborough, LLP, of Greenville; and Rivers Samuel Stilwell, of Maynard Nexsen PC, of Greenville, all for Respondent.

———————

**THOMAS, J.:** In this action for recovery under an insurance policy, the Insurance Reserve Fund (the Fund) appeals the findings of the master-in-equity, arguing the master erred by (1) finding coverage and making an award for covered loss under the Building and Personal Property Policy (the Policy) issued by the Fund; (2) wrongly interpreting and applying regulations governing land application of

biosolids[1] and the National Pollutant Discharge Elimination System (NPDES) permits issued to Renewable Water Resources (ReWa); (3) failing to make specific findings of fact and conclusions of law; (4) allowing inadmissible summary exhibits; (5) failing to consider the Policy's $3,000 deductible per occurrence; and (6) denying the Fund's new trial motion. We affirm in part, reverse in part, and remand for further findings in accordance with this opinion.

**FACTS**

In January of 2013, ReWa, a special-purpose district created for the treatment of wastewater, discovered through routine sampling that a third party had illegally introduced polychlorinated biphenyls (PCBs)[2] into its wastewater treatment system. The parties stipulated that during the relevant time period, ReWa was subject to the Policy, which was held by the Fund. The parties also stipulated that the third party's actions constituted vandalism and that vandalism was an included cause of loss under the Policy.

In relevant part, the Policy states the Fund "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The Policy directs the insured to "[t]ake all reasonable steps to protect the Covered Property from further damage." It also includes a "Cause of Loss – Special Form" that states coverage will be provided for "risks of direct physical loss" and lists an "Ordinance or Law Exclusion" that bars coverage for a loss "caused directly or indirectly" by "the enforcement of any ordinance or law[] (1) [r]egulating construction, use or repair of any property; or (2) [r]equiring the tearing down of any property, including the cost of removing its debris." This exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

The federal Toxic Substances Control Act (TSCA)[3] regulates biosolids containing PCB levels at or above fifty parts per million (ppm). Additionally, each of ReWa's

---

[1] Biosolids are a byproduct of wastewater treatment and are sometimes referred to as "sludge."

[2] According to the South Carolina Department of Health and Environmental Control (DHEC), the United States banned PCBs in 1979 due to their ability to build up in the environment and cause adverse health effects.

[3] 15 U.S.C. §§ 2601-2697.

facilities operates under NPDES permits[4] regulating the land application of biosolids and the discharge of wastewater. These permits contain a "duty to mitigate" clause directing the permittee to "take all reasonable steps to minimize or prevent any discharge or sludge use or disposal in violation of this permit which has a reasonable likelihood of adversely affecting human health or the environment" and stating that failure to comply violated the Clean Water Act (the Act) and "was a ground for enforcement action." The NPDES permit regulating wastewater also contains a list of chemicals and corresponding levels at which the permittee is allowed to discharge into the wastewater source. PCBs do not appear on this list.

Initial sampling showed levels of PCBs in the wastewater at ReWa's Pelham facility; through additional testing, ReWa discovered PCBs in holding tanks of biosolids for land application at the Mauldin Road and Lower Reedy facilities in March of 2013. A former ReWa board member testified that in total, ReWa held eleven million gallons of contaminated biosolids.

By August of 2013, ReWa had ceased land application[5] of the biosolids, had ordered temporary presses to compact the biosolids in preparation to dispose of them at a landfill, and was reactivating existing presses. ReWa also contracted with an attorney on environmental hazards and hired AECOM, a consulting firm, to advise ReWa on remediation.

On September 25, 2013, DHEC issued an Emergency Regulation for Management of Wastewater System Sludge prohibiting the land application of biosolids with any quantifiable PCB levels. It also provides that any wastewater generated as a byproduct of the treatment process with a quantifiable level of PCBs may not be reintroduced back into the treatment system. The emergency regulation remained in effect until February of 2014.

ReWa submitted a proposed plan to remediate the Pelham facility, which contained several structures that, when tested for PCBs, showed levels above fifty ppm. DHEC approved the plan subject to several requirements, including a directive that if any PCBs were detected, ReWa should cease operations until it could comply

[4] Although the permits for only ReWa's Pelham facility were entered into evidence, ReWa's chief technical officer testified the permits for its Mauldin Road and Lower Reedy facilities were "very similar."
[5] Prior to the contamination, ReWa primarily disposed of the biosolids by applying them to land as soil conditioner.

with the emergency regulation.  ReWa later undertook plans to remediate the Mauldin Road and Lower Reedy facilities.

ReWa subsequently submitted an insurance claim to the Fund, which denied coverage but offered a total of $30,000 under the Pollutant Cleanup and Removal Provision policy, an additional coverage provision.  ReWa then brought this action to determine coverage.

The master found the Policy covered most of ReWa's remediation expenses and awarded ReWa $5,824,924.49 in damages.  It found ReWa incurred $8,751,949.60 in remediation expenses but subtracted $2,516,054.27 from the total award for the normal costs of processing the biosolids.  The master declined to award damages for the following expenses: $249,572.00 paid to Greenville County Solid Waste due to lack of sufficient proof; $4,246.25 paid to AECOM for lack of sufficient proof; $1,320.00 for a double charge for pressure washing; and $155,832.59 in attorney's fees relating to the environmental and coverage counsel.  This appeal by the Fund followed.

## STANDARD OF REVIEW

"When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law."  *State Farm Mut. Auto. Ins. Co. v. Goyeneche*, 429 S.C. 211, 217, 837 S.E.2d 910, 913 (Ct. App. 2019) (quoting *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 46, 717 S.E.2d 589, 592 (2011)).  "In an action at law, tried without a jury, the appellate court's standard of review extends only to the correction of errors of law." *Smith v. Auto-Owners Ins. Co.*, 377 S.C. 512, 515, 660 S.E.2d 271, 272 (Ct. App. 2008).  "We will not disturb the trial court's findings of fact unless those findings are wholly unsupported by the evidence or controlled by an erroneous conception or application of the law."  *Id.*  "However, an appellate court may make its own determination on questions of law and need not defer to the trial court's rulings in this regard." *Auto-Owners Ins. Co. v. Rhodes*, 405 S.C. 584, 593, 748 S.E.2d 781, 785 (2013).

## LAW/ANALYSIS

## I.    Policy Coverage

The Fund argues the master erred in finding the Policy covered ReWa's remediation efforts at the three facilities.  We agree the master erred in finding the

Policy covered several categories of consequential damages but find the master properly awarded costs for cleaning the affected structures.

Initially, we note the Fund conceded in its appellate briefs that the Policy covered expenses associated with cleaning the three holding tanks at the Pelham facility "to the extent ReWa provided a breakdown of those specific costs." The Fund argues instead that ReWa has not provided a detailed report of the costs; however, multiple witnesses testified ReWa provided "almost monthly" expense reports to the Fund during the period between the filing of the claim and the Fund's denial of coverage. Moreover, ReWa's Exhibit 99 submitted at trial includes a summary of charges separated by facility, and the associated spreadsheet in ReWa's Exhibit 100 provides even more detail about these charges. ReWa informed the master that the corresponding invoices and related documents to these exhibits had been available for four years via discovery. Thus, we find the Fund has conceded the costs associated with cleaning the Pelham facility's holding tanks were covered under the Policy.

Next, we find the cleaning of the affected structures in the Mauldin Road and Lower Reedy facilities was also covered under the Policy. We acknowledge the structures in these facilities did not exceed the fifty-ppm-threshold under the Act; however, the uncontroverted evidence showed contaminated biosolids adhered to the walls of these structures even after initial washing. We find this constitutes direct physical loss or damage, which is covered under the Policy.

At oral argument, both parties agreed the interpretation of "direct physical loss or damage" contemplated in *Sullivan Management, LLC v. Fireman's Fund Insurance Co.*[6] controlled in this case. In *Sullivan*, our supreme court held that applying the plain meaning of "direct physical loss or damage" required "a tangible or material component to loss or damage." 437 S.C. at 594, 879 S.E.2d at 745. Although the court found neither restrictions on business operations nor the presence of airborne virus particles constituted physical loss or damage, it distinguished the case from "traditional" contamination cases, in which "coverage may exist." *Id.* at 593 n.3, 879 S.E.2d at 745 n.3. We find the adherence of contaminated materials to tank walls meets the triggering language of direct physical loss or damage.

Additionally, we find the master correctly applied the holding of *Ocean Winds Council of Co-Owners, Inc. v. Auto-Owners Insurance Co.*[7] to this case in

---

[6] 437 S.C. 587, 879 S.E.2d 742 (2022).
[7] 350 S.C. 268, 565 S.E.2d 306 (2002).

analyzing whether ReWa's actions to prevent further damage to the structures were covered under the Policy. In *Ocean Winds*, our supreme court accepted a certified question regarding whether an insurance policy that provided coverage for "risks of direct physical loss involving collapse of a building or any part of a building" covered a building which manifested "substantial structural impairment." 350 S.C. at 269-70, 565 S.E.2d at 307. The court found the phrase "*risks* of direct physical loss *involving* collapse" was "more expansive than the word 'collapse' and appear[ed] to cover even the threat of loss from collapse." *Id.* at 271, 565 S.E.2d at 308. Accordingly, our supreme court held that "a requirement of imminent collapse [wa]s the most reasonable construction of the policy clause covering 'risks of direct physical loss involving collapse'" and defined "imminent collapse" as "collapse . . . likely to happen without delay." *Id.* Here, the Policy stated it provided coverage for "risks of direct physical loss." We find the master correctly found coverage for a portion of the expenses incurred in preventing imminent damage through further contamination of the structures, such as providing for the sequestration of incoming waste.

However, we hold the master erred in awarding damages for several categories of consequential damages. The Fund points to four specific categories it argues constitute consequential damages: (1) testing and sampling; (2) expert consultation regarding DHEC and Environmental Protection Agency requirements; (3) investigating the contamination; and (4) continuing the operation of the wastewater facilities including future protocols for receiving waste. We agree these appear to be consequential damages and thus are not covered by the Policy because they do not relate to a direct loss. *See Sullivan*, 437 S.C. at 594, 879 S.E.2d at 745 (confirming "direct physical loss or damage" requires a "tangible or material element"). Accordingly, we reverse this portion of the damages award and remand to the master for recalculation of the award after excluding expenses falling into these categories of consequential damages.[8]

---

[8] To the extent the Fund argues the master erred by awarding other consequential damages, the argument regarding these damages is not preserved for this court's review because it was raised for the first time on appeal. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *Herron v. Century BMW*, 395 S.C. 461, 466, 719 S.E.2d 640, 642 (2011) (holding that an issue "must be sufficiently clear to bring into focus the precise nature of the alleged error so that it can be reasonably understood by the judge").

## II.  Specific Findings of Fact and Conclusions of Law

The Fund argues the master erred in failing to set forth sufficiently specific findings of fact and conclusions of law in its order.  We disagree.

Rule 52(a) of the South Carolina Rules of Civil Procedure provides, "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon . . . ."  This rule does not "require a lower court to set out findings on all the myriad factual questions arising in a particular case." *In re Treatment & Care of Luckabaugh*, 351 S.C. 122, 133, 568 S.E.2d 338, 343 (2002).  However, "the findings must be sufficient to allow [appellate courts] to ensure the law is faithfully executed below." *Id.*

We find the master's order sufficiently stated its reasoning behind finding the cleaning costs were covered under the Policy; however, as discussed above, we reverse and remand for removal of the specified consequential damages from the overall award.

## III.  Admission of Summary Exhibits

The Fund argues the master erred in admitting ReWa's Exhibit 99 and Exhibit 100 as summary exhibits under Rule 1006 of the South Carolina Rules of Evidence. The Fund points to the testimony of Glen McManus, ReWa's director of operations during the period of contamination, arguing that because he did not personally review each line item in the exhibits prior to trial, these exhibits were not a faithful rendering of the underlying data, and the master erred because the underlying data was not entered into evidence.  We disagree.

Rule 1006 reads,

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation, provided the underlying data are admissible into evidence.  The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place. The court may order that they be produced in court.

Regarding Rule 1006, this court has explained,

> The party seeking to admit a summary must demonstrate
> (1) the contents of the documents upon which the
> summary is based are so voluminous it would be
> inconvenient to examine them in court; (2) the
> underlying documents are admissible in evidence; (3) the
> summary is a faithful rendering of the underlying data,
> and any inferences it contains are supported by the
> contents and are neutral and non-argumentative; and (4)
> the originals or duplicates of the underlying documents
> have been made reasonably available to the other parties.

*State v. Warner*, 430 S.C. 76, 95, 842 S.E.2d 361, 370 (Ct. App. 2020), *aff'd in part and remanded*, 436 S.C. 395, 872 S.E.2d 638 (2022). "[T]he trial court—so better attuned to the rhythms of the trial than we are—has wide discretion over the choice of whether a summary should be admitted, excluded, or allowed only as a demonstrative aid." *Id.* at 97, 842 S.E.2d at 371.

Initially, we find the Fund's argument that the summaries should not have been admitted because the underlying data was also not admitted is without merit. Rule 1006 clearly states that the underlying data must be *admissible*, and the Fund has put forth no argument that the invoices which formed the basis for the summaries would not have been admissible at trial. Moreover, although McManus testified he did not identify each item in the Exhibit 100 spreadsheet, he and Patricia Dennis, ReWa's controller, testified the spreadsheet went through multiple rounds of review, and Dennis confirmed that each transaction was "absolutely" backed by an invoice or corresponding document in the accounting system. Finally, although we acknowledge it is not evidence, ReWa's counsel indicated the documents were available for four years via discovery for the Fund to review. Accordingly, we believe the master did not abuse its discretion in admitting the summaries. *See Osterneck v. Osterneck*, 374 S.C. 573, 579, 649 S.E.2d 127, 131 (Ct. App. 2007) ("The admission of evidence is a matter left to the discretion of the trial judge and, absent clear abuse, will not be disturbed on appeal.").

## IV. The Policy's Deductible

The Fund argues the master erred in failing to consider the Policy's deductible when calculating the damages award. We agree.

Section D of the Policy provides that the Fund "will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations."  Following the fulfillment of the deductible, the Fund "will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance."[9]  The Policy Declarations indicate a deductible of $3,000.

We find the master erred in failing to account for the Policy's deductible.  The Fund argues the master also erred in failing to define the number of occurrences; however, the Fund asserts in its appellate brief that it "believes there was a single occurrence."  Accordingly, we direct the master to subtract $3,000 from the revised damages award.

## V.  New Trial

The Fund argues the master's refusal to allow closing arguments, the inclusion of damages in the proposed orders, and the presence of a court reporter for a subsequent phone call following the hearing deprived it of its due process rights and necessitated the grant of a new trial.  We find this issue is not preserved for appellate review.  Although the Fund requested closing arguments, the inclusion of damages in the proposed orders, and the presence of the court reporter, it made no mention of due process.  *See Patterson v. Reid*, 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct. App. 1995) ("A party cannot for the first time raise an issue by way of a Rule 59(e) motion which could have been raised at trial."); *see also Herron*, 395 S.C. at 466, 719 S.E.2d at 642 (holding that although "a party is not required to use the exact name of a legal doctrine in order to preserve the issue," an issue "must be sufficiently clear to bring into focus the precise nature of the alleged error so that it can be reasonably understood by the judge").

**CONCLUSION**

Accordingly, the order on appeal is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**KONDUROS and GEATHERS, JJ., concur.**

---

[9] Although the limits of insurance for the three impacted facilities appear to have fluctuated over the relevant time period, it is undisputed that ReWa's remediation expenses never exceeded any of the insurance limits.