**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Christopher Young and Biotech Restorations, LLC,
Appellants/Respondents,

v.

Joanna Marie Paynter, a/k/a Joey Painter, Samantha P.
Nelson, and Paynter Consulting, LLC,
Respondents/Appellants.

Appellate Case No. 2022-001777

———————————

Appeal From Pickens County
Letitia H. Verdin, Circuit Court Judge

———————————

Unpublished Opinion No. 2024-UP-369
Submitted September 11, 2024 – Filed October 30, 2024

———————————

**AFFIRMED**

———————————

Wesley D. Few, of Wesley D. Few, LLC, of Greenville,
for Appellants-Respondents.

Steven R. LeBlanc, of Steve LeBlanc, LLC, of
Greenville, for Respondents-Appellants.

———————————

**PER CURIAM:** This appeal and cross-appeal arise out of a business relationship and involve a dispute over the circuit court's order interpreting a General

Partnership Agreement (GPA) executed by Appellant-Respondent Christopher Young and Dr. Valerie Paynter on May 30, 2006.  Appellants-Respondents[1] argue the circuit court erred by: (1) finding Respondents-Appellants[2] were the owners of Factor Technology; (2) construing the GPA provisions "in the event of a death of a partner"; (3) construing the GPA to provide Respondents-Appellants exclusive use and control of Factor Technology; and (4) failing to find a partnership breach and intentional interference by Respondents-Appellants.  Respondents-Appellants cross-appeal the circuit court's denial of their motion for a directed verdict, and the admission of the May 30, 2006 GPA into evidence.  We affirm.

**FACTS**

Dr. Paynter developed and owned a proprietary biochemical formula used to remediate soil pollution known as "The Factor."  Appellants-Respondents began doing business with Dr. Paynter in 2004, as evidenced by a handwritten agreement executed by Dr. Paynter and Young on November 19, 2004.  On January 1, 2006, Dr. Paynter and her company, Paynter Consulting, and Appellants-Respondents prepared and executed the first partnership agreement.  On May 30, 2006, the parties prepared and executed a second partnership agreement, the GPA[3].  Both agreements were signed and notarized.

Paragraph 3 of the GPA defines the purpose of the Partnership as follows:

> 3. Purpose – The business of the partnership is set forth below and relates to the treatment of contaminated soil, marine sediments and other media as applicable to the Factor [B]iotechnology.  To the extent necessary for the remediation of soil and marine sediments, the Partnership will utilize proprietary products and services under an exclusive use permit which restricts the use of the Factor

---

[1] Appellants-Respondents consist of Biotech Restorations, LLC (Biotech) and its owner, Christopher Young (Young).
[2] Respondents-Appellants are Joanna Paynter and Samantha Nelson.  They are the daughters of the late Dr. Valerie Paynter, the sole owner of Paynter Consulting, LLC (Paynter Consulting).  Paynter Consulting was held in default and is not a party to this action.
[3] The term "GPA" will hereafter refer exclusively to the May 30, 2006 second partnership agreement signed by the parties.

Biotechnology to this Partnership for all environmental business applications.

3a. Christopher W. Young (representing Biotech Restorations, LLC) and Valerie A. Paynter (representing Paynter Consulting) jointly agree to work exclusively in support of the Partnership in matters relating to the development of and commercial use of Factor based products in the environmental remediation marketplace.

3b. Paynter Consulting, having sole knowledge of the proprietary Factor formulation, agrees to provide the Partnership with exclusive use of Factor formulated products during the term of the Partnership, ongoing technical and scientific assistance in support of the Partnership and the first option to incorporate new technologies into the Partnership.

3c. Biotech Restorations, LLC, having developed existing markets and business opportunities, agrees to provide ongoing business development and management of remediation projects in which Factor Products are in use and exclusive ongoing support of the Partnership.

Paragraph 4 of the GPA defines the term of the Partnership as follows:

4. Term – The Partnership shall commence on and continue until dissolved by mutual agreement of the partners. The Partnership will terminate upon the death or incapacity of a partner . . . . In the event of a death of a partner, the remaining partner has the right to continue the business of the Partnership by themselves or in conjunction with any other persons they may select. The continuing partner will pay 10% of net profits annually to the heirs/estate of the deceased partner on any contract involving the use of [T]he Factor, and 10% gross from the sale of the Factor Technology.

Paragraph 5 of the GPA defines the distribution of profits for the Partnership as follows:

5. Distribution of Profits – The partners agree that net profits (after disbursement of expenses) arising from the Partnership will be distributed equally (50/50). A division of profits shall be made at such time as may be agreed upon by the partners and at the close of each fiscal year.

Paragraph 6 of the GPA defines control within the Partnership as follows:

6. Control – The partners shall have exclusive control over the Factor Based Environmental Remediation Business and each partner shall have equal rights in the management and conduct of the Partnership business. Any difference arising as to the ordinary matters connected with the Partnership business shall be decided by a third[-]party arbitrator chosen and agreed upon by the partners. Any act beyond the scope of this Partnership agreement or any contract that may subject this Partnership to liability shall be subject to the prior written consent of the partners.

Disputes arose between Young and Dr. Paynter in the years leading up to 2015. In August of that year, Paynter Consulting filed a complaint against Appellants-Respondents for eleven causes of action including, *inter alia*, breach of contract, breach of contract accompanied by a fraudulent act, breach of duty of loyalty, breach of fiduciary duty, and fraud. Dr. Paynter moved to dismiss without prejudice and the motion was granted.

Dr. Paynter passed away on September 4, 2017. At the time of her death, Dr. Paynter had only shared the formula for The Factor with her husband (deceased) and Respondents-Appellants. Her estate was probated by the Pickens County Probate Court. Appellants-Respondents filed a Creditor's Claim during the probate of Dr. Paynter's estate claiming ownership of The Factor. Additionally, they claimed Respondents-Appellants had: (1) possession of trade secrets; (2) refused to return the trade secrets; and (3) attempted to sell trade secrets in breach of the GPA. The claim was disallowed, and the probate of Dr. Paynter's estate was closed on March 25, 2019. The findings of the probate court were never appealed by Appellants-Respondents.

Appellants-Respondents filed the present lawsuit, again claiming that they owned Dr. Paynter's bioremediation technology and that Respondents-Appellants had possession of Dr. Paynter's records, had refused to return the records, and had attempted to sell the trade secrets in breach of the GPA. Respondents-Appellants filed an Answer, generally denying the allegations in the Complaint and asserting affirmative defenses for, *inter alia*, res judicata and the statute of limitations.

A jury trial commenced on April 20, 2022. Pretrial, the court heard arguments from both parties as to the admission of the GPA. Ultimately, the court admitted the GPA because both agreements were signed and notarized. Nevertheless, the court gave a limiting instruction regarding testimony about the GPA. After the close of Appellants-Respondents' case and directed verdict rulings, the parties agreed to dismiss the jury and conduct the remainder of the trial as a bench trial. During the trial, the court overruled Respondents-Appellants' objections and allowed Appellants-Respondents to authenticate and admit into evidence two versions of a partnership agreement. The court granted Respondents-Appellants a directed verdict on Appellants-Respondents' first cause of action for Declaratory Judgment, Breach of Agreement; fifth cause of action for Aiding and Abetting Breach of Fiduciary Duty; and sixth cause of action for Breach of Fiduciary Duty. Respondents-Appellants also moved for a directed verdict on all claims based on res judicata and the statute of limitations, which the circuit court denied.

At the close of the April trial, the parties volunteered to conduct settlement discussions outside of court to hopefully reach a resolution. They agreed to reconvene in front of the circuit court at a later date and continue the non-jury trial only if they could not reach an agreement. An agreement was never reached, and on August 11, 2022, the court conducted a hearing at which time Respondents-Appellants renewed their prior motions and, "in the context of resuming the trial," rested without providing further evidence or testimony. Appellants-Respondents offered to provide the court with deposition testimony of Joanna Paynter in lieu of her in-court testimony that never occurred because Respondents-Appellants rested. The remainder of the hearing laid out the parties' plans to submit proposed contract constructions to the court prior to the execution of a final order.

On November 10, 2022, the court issued an order containing the court's findings, specifically as to construction of the GPA. On November 17, 2022, the court issued an order amending a portion of the order issued on November 10, 2022.

The circuit court's order found the language of the GPA was unambiguous, and the Partnership no longer existed. "Since there was no mutual agreement of the partners to dissolve the Partnership prior to Dr. Paynter's death, her death as a partner is what ultimately terminated the Agreement." As to who owned The Factor, the court further found:

> The introductory sentence of the Agreement states that Paynter Consulting is "owned and operated solely by" Dr. Paynter. Paragraph 3 of the Agreement states that the "business of the partnership is set forth below and relates to the treatment of contaminated soil, marine sediments and other media as applicable to the **Factor [B]iotechnology**" and "the Partnership will utilize propriety products and services under an exclusive use permit which restricts the use of the **Factor Biotechnology** to this Partnership for all environmental business applications." Paragraph 3.b further states that Paynter Consulting "having sole knowledge of the **proprietary Factor formulation**, agrees to provide the Partnership with exclusive use of **Factor formulated products** during the term of the Partnership." (emphasis in original).

The circuit court construed these clauses together to find, based on the GPA, Paynter Consulting had sole knowledge of The Factor formulation, and Paynter Consulting was owned and operated solely by Dr. Paynter. There was nothing in the remainder of the GPA that required Dr. Paynter or Paynter Consulting to share, transfer, or otherwise disclose the formula of The Factor. Further, there was nothing in the GPA that restricted Paynter Consulting or Dr. Paynter from sharing The Factor formulation with her children. As the sole owner and operator of Paynter Consulting, Dr. Paynter was the only person with sole knowledge of the proprietary Factor formulation; thus, she was the sole owner of The Factor prior to her death, according to the GPA.

As to the split of the sale, the circuit court found:

> If [Respondents-Appellants] should choose to sell the Factor Biotechnology, the contract for sale must include a provision allowing [Appellants-Respondents] to use the Factor Biotechnology after the sale. In addition, in

compliance with the terms set forth in the Agreement, if [Respondents-Appellants] choose to sell the Factor Biotechnology, they would be required to pay [Appellants-Respondents] 10% gross from the sale.

As to the rights to The Factor, the circuit court's order found the GPA:

> [C]ontemplates that a partner may continue the business of the Partnership after the death of a partner. Continuation of the business of the Partnership would be impossible for [Appellants-Respondents] without use of the Factor Biotechnology. Therefore, [Appellants-Respondents] have the right to use the Factor Technology and enter into contracts for use of the Factor Technology. However, [Respondents-Appellants] own the Factor Biotechnology and are not required to share the Factor Biotechnology formulation with [Appellants-Respondents].

The court continued, "While the partners enjoyed exclusive use of the Factor Biotechnology 'during the term of the Partnership,' Paragraph 4 states 'the remaining partner has the right to continue the business of the Partnership by themselves or in conjunction with any other person they may select.'" Further, the order found, "If the partners intended for the remaining partner to have the 'exclusive' right to continue business with the Factor Biotechnology following the death of the other, language indicating that would be included in the contract."

This appeal and cross-appeal followed.

## STANDARD OF REVIEW

"It is a question of law for the court whether the language of a contract is ambiguous." *S.C. Dep't. of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001). "The construction of a clear and unambiguous contract is a question of law for the court." *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct. App. 1997). "In an action at law, tried without a jury, the appellate court's standard of review extends only to the correction of errors of law." *Smith v. Auto-Owners Ins. Co.*, 377 S.C. 512, 515, 660 S.E.2d 271, 272 (Ct. App. 2008). "We will not disturb the trial court's findings of fact unless those findings are wholly unsupported by the evidence or controlled

by an erroneous conception or application of the law." *Id.* "However, an appellate court may make its own determination on questions of law and need not defer to the trial court's rulings in this regard." *Auto-Owners Ins. Co. v. Rhodes*, 405 S.C. 584, 593, 748 S.E.2d 781, 785 (2013).

## LAW/ANALYSIS

### A. Appellants-Respondents' Appeal

### 1. General Partnership Agreement Interpretation

Appellants-Respondents argue the circuit court committed reversible error by: (1) finding Respondents-Appellants were the owners of The Factor, (2) construing the GPA to provide for a 90/10 split on the sale of The Factor in favor of Respondents-Appellants, who are "heirs/estate of the deceased partner" not the "remaining partner," and (3) construing the GPA without recognizing the partners' intent that profits related to The Factor be split on a 50/50 basis during their lifetimes, and 90/10 thereafter in favor of the "remaining partner," who has rights of use and sale of The Factor "in the event of a death of a partner." We affirm.

"The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009). The language alone will determine the contract's force where such language is unambiguous; however, where the language is subject to multiple interpretations, the fact finder must determine the parties' intentions from the evidence presented. *Compare Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003) (stating that where the language is clear and unambiguous the intent of the parties is to be derived from the language of the contract) *with Charles v. B & B Theatres, Inc.*, 234 S.C. 15, 18, 106 S.E.2d 455, 456 (1959) (finding that when the contract is ambiguous in its terms other evidence must be considered to ascertain the intent of the parties). A party may not create an ambiguity by reading a single sentence or clause, but rather the contract and the language used must be considered as a whole. *Schulmeyer*, 353 S.C. at 495, 579 S.E.2d at 134.

### Ownership of The Factor Technology

Appellants-Respondents argue the circuit court committed reversible error by finding Respondents-Appellants were the owners of The Factor technology.

Dr. Paynter was able to share The Factor formulation with Respondents-Appellants prior to her death; thus, after her death, Respondents-Appellants became the only persons with sole knowledge of the proprietary Factor formulation. Daughter Samantha Nelson testified in her deposition that she believed she and Daughter Joanna Paynter became owners of The Factor in the spring of 2016 when Dr. Paynter provided Respondents-Appellants with her lab notebooks detailing her bench studies for The Factor. In the Declaration of Joanna Paynter, she testified that Dr. Paynter met with Respondents-Appellants in August 2009, and intimated that she wanted to transfer the formulation for The Factor to Respondents-Appellants before her death. It was at that time Respondents-Appellants were given the formula to The Factor. The GPA only addressed the exclusive use of The Factor while the partnership was ongoing, and it provided no language preventing Dr. Paynter from sharing the formula prior to, or at the time of, her passing. The circuit court properly interpreted the language of the GPA when it found:

> [A]llowing for the right to continued use of the Factor Biotechnology upon the death of one, unspecified partner demonstrates to this Court there was no intent on behalf of either party for the information concerning the Factor formulation to die with Dr. Paynter. Dr. Paynter did not choose to share this information with [Appellants-Respondents], but there is nothing within the GPA requiring or limiting her to do [so].

We agree with the circuit court's interpretation of the plain language of the GPA finding Respondents-Appellants were the sole owners of The Factor upon the death of Dr. Paynter.

*Rights, Use, and the Sale of The Factor*

Appellants-Respondents argue the circuit court committed reversible error by construing the GPA to grant exclusive use and control of The Factor to Respondents-Appellants after Dr. Paynter's death. Further, Appellants-Respondents argue the circuit court committed reversible error by construing the GPA to provide for a 90/10 split on the sale of The Factor in favor of Respondents-Appellants, who are "heirs/estate of the deceased partner" not the "remaining partner." We disagree.

In its order, the circuit court held:

> The plain language of the Agreement is consistent
> throughout, specifically concerning these portions that
> reference rights of the partners at differing periods of
> time. Therefore, this Court finds
> [Respondents-Appellants] could choose to use the Factor
> Biotechnology, sell it, or a combination of both so long
> as they abide by the conditions concerning
> [Appellants-Respondents'] continued use and
> compensation.

Based on the circuit court's interpretation of the GPA, Respondents-Appellants are not given exclusive use and control of The Factor. As previously addressed, Respondents-Appellants have the right of ownership to The Factor, and they are not required to divulge the formula to anyone based upon the GPA. However, the right to use The Factor to enter into contracts still remains with Appellants-Respondents.

Here, Paragraph 4 of the GPA governs the term and split of the sale of The Factor. The plain language of the GPA expressly states, and the circuit court concluded, the surviving partner has the right to continue the business of the Partnership after the death of the other partner, however a percentage of profits must be shared with the heirs of the deceased partner, in this case, Respondents-Appellants. We find the circuit court properly interpreted this unambiguous clause to contemplate that the surviving partner may continue the business of the Partnership and enter into contracts even after the death of the other partner. According to the GPA, the remaining partner may enter contracts that do or do not include the use of The Factor. Appellants-Respondents are only required to pay 10% to Respondents-Appellants on contracts that utilize The Factor. Importantly, Young testified at trial that he and his company, Biotech, did, in fact, conduct business and enter into contracts without using The Factor after 2015. Because these contracts did not involve the use of The Factor, Appellants-Respondents were not required to pay any portion of the profits to Respondents-Appellants, as the GPA contemplated.

Based on the foregoing, we affirm the findings of the circuit court's order based on the construction and interpretation of the plain language of the GPA.

## 2. Breach of General Partnership

Appellants-Respondents argue the circuit court erred in failing to find Dr. Paynter breached the GPA by sharing The Factor with Respondents-Appellants before her death and that Respondents-Appellants therefore interfered with the GPA. We disagree.

Factual findings of the trial court are reviewed with deference and will not be reversed unless there is no evidence to support the factual findings. *See, e.g.*, *Auto Owners Ins. Co. v. Newman*, 385 S.C. 187, 191, 684 S.E.2d 541, 543 (2009) ("In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless there is no evidence to reasonably support them.").

The circuit court made a factual finding that "Dr. Paynter was able to share The Factor with [Respondents/Appellants] before her death" without breaching the GPA. The evidence used to make this determination was the unambiguous language in the GPA. The court further determined that, according to the unambiguous language of the GPA, Dr. Paynter was the sole owner of The Factor, and that the GPA provided no restrictions upon Dr. Paynter as the sole owner to share the formula with anyone, including Respondents-Appellants. Because there were no restrictions on the sharing of The Factor, there could be no breach on the part of Paynter Consulting or Dr. Paynter, thus no interference by Respondents-Appellants.

We find the circuit court did not err when it found no breach and no interference of the GPA on the part of Dr. Paynter, Paynter Consulting, and Respondents-Appellants.

## B.    Respondents-Appellants' Cross-Appeal

Respondents-Appellants appeal three separate rulings by the circuit court which they argue, if decided correctly, provide independent bases for affirming the judgment and rendering moot or vacating the circuit court's construction of the GPA. Respondents-Appellants argue the circuit court erred in denying their motion for directed verdict based on res judicata and the statute of limitations. Respondents-Appellants further argue the circuit court erred in admitting the GPA into evidence because Appellant-Respondents provided no admissible evidence to authenticate the GPA. Because we affirm based on the circuit court's proper contract interpretation, we need not address these arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating appellate courts need not address remaining issues when the disposition of prior issues is dispositive).

**CONCLUSION**

For the foregoing reasons, the order of the circuit court is

**AFFIRMED.**[4]

**THOMAS, HEWITT, and VINSON, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.